Ted Alan STEPHAN and Karen A.
Stephan, Plaintiffs,

v.

UNITED STATES, Defendant.

No. K75–506 CA9.

United States District Court,
W. D. Michigan, S. D.

May 22, 1980.

Thomas D. Geil, Battle Creek, Mich., for plaintiffs.

James S. Brady, U. S. Atty., Grand Rapids, Mich., for defendant.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

This is a suit brought pursuant to the Federal Torts Claims Act for damages arising out of events that took place at Hart Lake on the Fort Custer Military Reservation on May 22, 1972. On that day plaintiff Ted Alan Stephan suffered severe and permanently disabling injuries, specifically a cervical fracture with spinal cord damage, resulting in partial paralysis of both upper extremities and the right lower extremity. Plaintiff Karen A. Stephan is Mr. Stephan's wife, and her claim is for impairment of consortium.

Defendant, the United States Government, has moved for dismissal for lack of jurisdiction pursuant to Rule 12 of the Federal Rules of Civil Procedure. There are several alternative bases for the motion. The first involves the plaintiffs' failure to file their claim with the appropriate administrative agency within the statutorily prescribed time.

The Tort Claims Act [1] bars a tort claim against the United States unless the claim is presented to the appropriate federal agency within two years after such claim accrues. Another section of the Act [2] deprives the Court of jurisdiction over any cause of action unless the claim has been properly presented to the appropriate federal agency and that agency either has denied the claim or failed to act on it within a six-month period. *Allen v. United States*, 517 F.2d 1328 (6th Cir. 1975). The requirement of filing an administrative claim extends to a claim asserted by a plaintiff's spouse for loss of services and consortium arising out of an injury to the plaintiff. *Collazo v. United States*, 372 F.Supp. 61 (D.Puerto Rico 1973); *see Heaton v. United States*, 383 F.Supp. 589 (S.D.N.Y.1974). The government has asserted in its motion papers and repeatedly at the hearing, that no administrative claim has ever been filed by or on behalf of plaintiff Karen A. Stephan. This has not been controverted by plaintiffs in any written or oral response. The Court therefore will take the defendant's assertion as true and dismiss the claim of Karen A. Stephan based on impairment of consortium for lack of subject matter jurisdiction.

Turning next to Ted Alan Stephan's personal injury claim, the defendant argues that because his claim was not filed with the appropriate federal agency until January 17, 1975, nearly two years and eight months after the injury was sustained, the

1. 28 U.S.C. § 2675(a) provides that:
 An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim or counterclaim.

2. 28 U.S.C. § 2401(b) provides:
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Court has no jurisdiction to hear it. Mr. Stephan, however, relies on provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. §§ 501 *et seq.*, as amended. Of particular relevance is section 525 of the SSCRA, which reads as follows:

The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service, nor shall any part of such period which occurs after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 [Oct. 6, 1942] be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax or assessment.

50 U.S.C. App. § 525 (1976). Mr. Stephan was a member of the Air National Guard of Michigan and the Reserve of the United States Air Force from approximately May 18, 1969 until January 25, 1973, when he received an honorable discharge. As a result, if the SSCRA is found to apply and the period between May 22, 1972 and January 25, 1973 is not included in computing the two year time limit of the FTCA, then the January 17, 1975 filing with the appropriate federal agency would have to be considered timely. In order to find section 525 applicable, however, several issues must be resolved.

First, because the SSCRA defines the term "person in military service" as including

the following persons and no others: All members of the Army of the United States, the United States Navy, the Marine Corps, the Coast Guard, and all officers of the Public Health Service detailed by proper authority for duty either with the Army or the Navy[,]

50 U.S.C. App. § 511(1) (1976), the question arises as to the applicability of section 525 to plaintiff as a member of the Reserve of the United States Air Force. It is beyond the comprehension of this Court that it was the intent of Congress to provide relief to members of the Army, Navy, Marines, and Coast Guard and exclude members of the Air Force. The purpose of the SSCRA was "to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation," 50 U.S.C. App. § 510 (1976). The exclusion of Air Force personnel from the coverage of the SSCRA would contradict this stated purpose.

The Court also takes notice of the fact that at the time the SSCRA was enacted, 1940, the Air Force was not a separate branch of the military, but was a part of the Army. The United States Air Force was not established until the enactment of the National Security Act of 1947, 61 Stat. 495. In addition, the United States Court of Claims has applied the tolling provision of the SSCRA in a case involving an Air Force officer in *Sidoran v. United States*, 550 F.2d 636, 638 (Ct.Cl.1977).

The applicability of the SSCRA to reservists in the military is clear, *e. g.*, *Bowles v. Dixie Cab Ass'n*, 113 F.Supp. 324, 326 (D.D.C.1953) (Navy); *see Sidoran v. United States*, 550 F.2d 636 (Ct.Cl.1977) (Air Force). The Court finds these factors persuasive as to the correctness of including Air Force reserve personnel within the coverage of the SSCRA.

The next issue warranting attention is whether the period between the events of May 22, 1972 and plaintiff's discharge on January 25, 1973 constitutes a "period of military service" within the meaning of section 525. This term is specifically defined in the SSCRA as terminating "with the date of discharge from active service," 50 U.S.C. App. § 511(2) (1976), and "active service" is defined as including "the period

during which a person in military service is absent from duty on account of sickness, wounds, leave, or other lawful cause." *Id.* at § 511(1). It is thus clear from the language of the statute itself that the period here involved is a part of the period which, according to section 525, is not to be included in computing the time within which to make a claim.

█ The government has vigorously argued that the SSCRA tolling provision does not and should not apply to the time limitations of the FTCA because they constitute jurisdictional prerequisites rather than a statute of limitation. The foundation of this argument is that the FTCA is a waiver of the sovereign immunity of the United States and, as such, must be strictly construed so as to provide relief only when it is clear that the waiver of immunity was intended. The government, however, is unable to present any cases that have held the SSCRA inapplicable to a FTCA action, or any other action. The government relies heavily on the decision of the United States Supreme Court in *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), holding that the statute of limitations for claims against the government should not be extended due to war. Defendant quotes from the case to the effect that FTCA time limitations "must be strictly observed and exceptions thereto are not to be implied," *Id.* at 276, 77 S.Ct. at 273. That very page of the opinion, however,

also contains a footnote noting specific Congressional actions which do toll such statutes of limitations, and among those specifically listed is the SSCRA, 50 U.S.C. App. § 525. *Id.* at n.7. While this language is admittedly dictum, this Court finds it persuasive, particularly in the absence of any direct authority on the issue.[3] Nor does the Court find the distinction between a statute of limitations and a jurisdictional prerequisite to provide a basis for different treatment under section 525. The language of section 525 is not directed solely to statutes of limitations but refers to "*any period* now or *hereafter* to be limited by any law, regul tion, or order for the bringing of *any action or proceeding*." 50 U.S.C. App. § 525 (1976) (emphasis added). The Court therefore holds section 525 applicable to FTCA cases.

The government also argues as an alternative ground for dismissal that plaintiff is barred from recovery by what has become known as the *Feres* doctrine. In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen *where the injuries arise out of or are in the course of activity incident to service.*" *Id.* at 146, 71 S.Ct. at 159. (emphasis added). The parameters of the term "activity incident to service" are at best vague[4] and the standard has been the sub-

---

**3.** Plaintiff has supplied the Court with the relevant pages of a treatise where the author expresses the opinion that the SSCRA should toll the FTCA time limitations. The specific language is as follows:

§ 279.07 Claimant in the Armed Forces: Tolling Provisions of the Soldiers' and Sailors' Civil Relief Act

While there are no Tort Claims Act cases in point, it seems evident that the Tort Claims Act's limitations period will be tolled while the claimant is serving in the armed forces. This follows not from any provision of the Tort Claims Act, itself, but from the mandate of the Soldiers' and Sailors' Civil Relief Act. Jayson, Handling Federal Tort Claims § 279.07 (footnotes omitted). The Court's own research also has failed to unearth any direct authority on point.

**4.** One recent *Note* discussed the term as follows:

Some courts have applied an absolutist rule, whereby a claim is barred where the serviceman would not have been injured but for the fact that he was on active duty, *see, e. g., Hass v. United States,* 518 F.2d 1138 (4th Cir. 1975); *Henninger v. United States,* 473 F.2d 814 (9th Cir.), *cert. denied,* 414 U.S. 819 [94 S.Ct. 43, 38 L.Ed.2d 51] (1973), while others have defined "incident to service" as depending on whether the serviceman was on- or off-base at the time of the injury, *see, e. g., Zoula v. United States,* 217 F.2d 81 (5th Cir. 1954); *Chambers v. United States,* 357 F.2d 224 (8th Cir. 1966). *See generally,* Jacoby, *The Feres Doctrine,* 24 Hastings L.J. 1281 (1973); Rhodes, *The Feres Doctrine After Twenty-Five Years,* A.F.L.Rev., Spring 1976 at 24; Note, *Military Rights Under the FTCA,* 43 St.John's L.Rev. 455 (1969).

ject of considerable criticism.[5] *Feres* consisted of three cases, one involving a serviceman injured when his barracks caught fire during the night, and the other two involving servicemen who received negligent treatment by Army doctors while they were on active duty. The Court held all of these injuries to be incident to service and therefore found the Government free from FTCA liability.

One year before *Feres* the Court decided *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). *Brooks* involved a collision on a public highway, between an Army truck and the automobile in which Welker Brooks, Arthur Brooks, and their father, James Brooks, were riding. Arthur Brooks was killed and both Welker and James Brooks were seriously injured. The Government argued that because Arthur and Welker were in the armed forces that they were barred from recovery. This argument persuaded the Court of Appeals, with one judge dissenting, but the Supreme Court reversed and allowed recovery. The Court found that the case involved "an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired." *Id.* at 52, 69 S.Ct. at 920.

In cases determining that *Brooks* rather than *Feres* applies the opinions have generally emphasized three factors. First, that at the time of the accident the plaintiff-serviceman was on leave or furlough or pass. Second, that the accident occurred somewhere other than on the military base where the serviceman was stationed. Third, that at the time of the accident he was not under the compulsion of military orders, performing any military mission, or directly subject to military control. *See*

Note, *From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?*, 77 Mich.L.Rev. 1099, 1099–1100 n.6 (1979). *See also*, Jayson, *Handling Federal Tort Claims* § 155.02.

**5.** *See, e.g.*, Note, *From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?*, 77 Mich.L.Rev. 1099 (1979);

Jayson, Handling Federal Tort Claims § 155.07, and cases discussed therein.

 In the instant case the facts relevant to this issue are as follows: Part of Mr. Stephan's duties with the Michigan Air National Guard included training National Guard troops. For a period of approximately *four and one-half months* immediately prior to the May 22, 1972 accident, plaintiff was engaged in training a group of National Guard troops at Kellogg Regional Airport. May 22, 1972 was the last day of their training, and it was decided that a "bash" would be held at Hart Lake that evening. His affidavit states that the Kellogg Regional Airport is a base "totally separate and distinct from the Fort Custer Military Reservation," where Hart Lake is and where the accident took place. He further alleges in his affidavit:

> I was not compelled to attend the party. I was under no compulsion to perform any military duties, either before, during, or after the party. There were no military personnel supervising the party and there were no designated life guards. All the people attending the party were members of the Michigan Air National Guard. Further, the location of the party was not where I normally performed my regular duties.

The closest analog in the case law to the facts presented in this case is the series of cases involving swimming pool accidents. In *Brown v. United States*, 99 F.Supp. 685 (S.D.W.Va.1951) plaintiff's decedent was a Navy enlisted man on weekend liberty. He visited a swimming pool maintained by a Navy base for the benefit of servicemen and their families and guests while on shore leave, and was drowned when his arm was sucked into a water-drainage pipe in the bottom of the pool. The court held that

Hitch, *The Federal Tort Claims Act and Military Personnel*, 8 Rutgers L.Rev. 316 (1954); Rhodes, *The Feres Doctrine After Twenty-Five Years*, A.F.L.Rev., Spring 1976 at 24; Note, *Federal Liability to Personnel of the Armed Forces*, 20 Geo.Wash.L.Rev. 90 (1951); Note, *Military Rights Under the FTCA*, 43 St. John's L.Rev. 455 (1969).

*Brooks* applied because the plaintiff was not on any military mission, was not on his usual base and was free to go and do as he wished at the time of the accident.

In *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966) the ·Eighth Circuit held that *Feres* rather than *Brooks* applied where a serviceman drowned in a swimming pool at the base where he was stationed and there was no evidence that he was on leave or furlough. The court in *Knight v. United States*, 361 F.Supp. 708 (W.D.Tenn.1972), *aff'd without published opinion*, 480 F.2d 927 (6th Cir. 1973), also found *Feres* applicable in a case where a serviceman drowned in his base pool while on liberty status.

The key factors necessary to harmonizing these decisions are that in order for *Brooks* to apply the serviceman must be away from his own base, not on any military mission, and free to go and do as he wishes. Because each of these factors is fulfilled in the instant case this Court finds *Brooks* to be the applicable case, and, therefore, that the *Feres* doctrine does not bar recovery.

For the reasons stated herein, the Government's motion to dismiss is hereby denied.

IT IS SO ORDERED.