**Jean D. DuPONT and Philip DuPont, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A. 2:97–0476.**

United States District Court, S.D. West Virginia, Charleston Division.

Nov. 3, 1997.

W.E. Mohler, Charleston, WV, for Plaintiffs.

Stephen M. Horn, Asst. U.S. Atty., Rebecca A. Betts, U.S. Atty., Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the Court is the Government's September 29, 1997 motion to dismiss Philip DuPont's loss of consortium claim for lack of subject matter jurisdiction and memorandum in support thereof. The plaintiffs failed to file a timely response to the Government's motion, *see* LOCAL R. CIV. P. 4.01(c), and have not filed any response to date.

### Summary

As required by the Federal Tort Claims Act, Jean D. DuPont submitted her tort claim against the U.S. Postal Service for administrative determination before initiating the instant action. Her husband, Philip DuPont, now attempts to attach his claim for loss of consortium to Mrs. DuPont's lawsuit. The Court is of the opinion that the West Virginia Supreme Court of Appeals recognizes loss of consortium as an action independent of the injured spouse's tort action. Therefore, the Federal Tort Claims Act required Philip DuPont to submit his claim for administrative review before bringing the claim in federal court. Mr. DuPont's failure to exhaust the administrative remedies mandated by the Act deprives this Court of subject matter jurisdiction over his claim. Accordingly, the Court **GRANTS** the Government's motion to dismiss Philip DuPont's claim for lack of subject matter jurisdiction.

### Background

This action arises out of Jean D. DuPont's claim that she slipped and fell on a defective floor in a Charleston, West Virginia, United States Post Office. As a result of the January 8, 1995 fall, Mrs. DuPont suffered knee and hip injuries. Pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, Mrs. DuPont sued the United States Postal Service under a negligence theory and submitted her claim for administrative determination. The Postal Service denied her claim on November 8, 1996. On May 2, 1997, Mrs. DuPont and her husband, Philip DuPont, filed the instant action. The complaint re-alleged Mrs. DuPont's negligence claims and also included a claim by Mr. DuPont for loss of consortium. The DuPonts asserted that, "Plaintiffs' claims have first been presented to the United States Postal Service and ... have been finally denied," and that the FTCA therefore allowed this Court subject matter jurisdiction over the action. (Compl. ¶¶ 9–10.)

In its motion to dismiss, the Government contends that the Court lacks subject matter jurisdiction over Mr. DuPont's claim because

he failed to submit the claim for administrative determination as required by FTCA § 2675(a). Attached to the Government's motion to dismiss is the declaration of William B. Neel, an employee with the United States Postal Service Law Department. The declaration states that, as of September 10, 1997, the Postal Service had yet to receive the requisite administrative claim from Mr. DuPont for his loss of consortium action.

As a preliminary matter the Court notes that 28 U.S.C. § 1746 permits a litigant to submit an unsworn declaration, which is dated and subscribed as being true under penalty of perjury, in lieu of an affidavit. *See Willard v. Internal Revenue Service*, 776 F.2d 100, 102 n. 3 (4th Cir.1985); *United States v. County of Arlington*, 702 F.2d 485, 489–90 (4th Cir.1983); *see also Carney v. U.S. Department of Justice*, 19 F.3d 807, 812 n. 1 (2d Cir.), *cert. denied*, 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Thomas v. U.S. Department of Energy*, 719 F.2d 342, 344 n. 3 (10th Cir.1983). Mr. Neel's declaration is in compliance with § 1746's requirements. Hence, his declaration has the same force and effect as an affidavit, and the Court may consider it when evaluating the Government's motion to dismiss.

## Motion to Dismiss Based on Lack of Subject Matter Jurisdiction

*In Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982), the Fourth Circuit noted that it is appropriate to present a motion to dismiss for lack of subject matter jurisdiction when the movant asserts that the complaint's jurisdictional allegations are untrue. *Id.* at 1219. A Federal Rule of Civil Procedure 12(b)(1) motion challenging the factual basis for subject matter jurisdiction places the burden of proving jurisdiction · on the plaintiff. *Richmond, Fredericksburg & Potomac Railroad Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams*, 697 F.2d at 1219), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992). When reviewing such a motion, the court may venture beyond the complaint's allegations and "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*, 945 F.2d at 768 (citation omitted). The court

may consider evidence by affidavit, depositions, live testimony, *see Adams*, 697 F.2d at 1219 (citation omitted), or declarations complying with 28 U.S.C. § 1746. *See supra.* Unlike the procedure in a Rule 12(b)(6) motion, in which the fact finder is presumed to retain the truth-finding role, a court considering a Rule 12(b)(1) motion may weigh the evidence to determine whether it has subject matter jurisdiction. *Adams*, 697 F.2d at 1219. A movant may prevail only if the material jurisdictional facts are undisputed and the movant is entitled to prevail as a matter of law. *Richmond,* 945 F.2d at 768 (citation omitted).

## Historical Background

The action for loss of spousal consortium originates with the Roman notion of *paterfamilias,* the male head of household. Roman law did not recognize women and children as independent persons with the ability to bring their own causes of action. Therefore, only the *paterfamilias* could vindicate wrongs done to household members. English courts subsequently adopted the action and applied it in the employment context, allowing masters to recover for the diminished value of injured servants. English courts also applied the *paterfamilias* action to the family and analogized the master with the husband/father and the servant with the wife/children. *See* Susan G. Ridgeway, Comment, *Loss of Consortium and Loss of Services Actions: A Legacy of Separate Spheres,* 50 MONT. L.REV. 349, 349–64 (1989) (providing extensive historical overview of loss of consortium claim). By the eighteenth century, English courts recognized the husband's actionable right for loss of a wife's consortium, a chattel action protecting the husband's legal interest in his wife's services, society, and sexual relations. *See Seagraves v. Legg,* 147 W.Va. 331, 337, 127 S.E.2d 605 (1962) (noting that common-law loss of consortium action "was based on the theory that the wife was a chattel, or property of the husband"), *overruled by* W. VA.CODE § 48–3–19a. Because the law deemed husband and wife one person, with all rights vested in the husband, a wife did not have an action for loss of consortium. *See* Jo–Anne M. Baio, Note, *Loss of Consortium: A Derivative In-*

*jury Giving Rise to a Separate Cause of Action,* 50 FORDHAM L.REV. 1344, 1346–47 & nn. 16–18 (1982).

American courts adopted the English action for loss of consortium and established consortium as a contractual right vesting on marriage. When legislatures began to recognize women as legal individuals with concomitant rights to own property, make contracts, and sue, courts extended to women a limited right of consortium. Although courts recognized a husband's right to recover for loss of his wife's services, as well as for loss of the "emotional" or "sentimental" aspects of consortium (i.e., companionship, affection, fidelity, and sexual relations), wives were limited to loss of consortium actions based solely on material loss (e.g., loss of support). It was not until the seminal case of *Hitaffer v. Argonne Co.,* 183 F.2d 811 (D.C.Cir.), *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), that the law began to recognize that "[i]nvasion of the consortium is an independent wrong directly to the spouse so injured." *Id.* at 815. Since *Hitaffer,* courts and legislatures have allowed that each spouse has a separate and actionable right for loss of the material support and services of the other, as well as for loss of "companionship, love, felicity, and sexual relations." *Id.* at 819; *see* Baio, *supra,* at 1345 & n. 9 ("It is also now generally recognized that loss of consortium is a separate injury of the loss of consortium spouse."); Ridgeway, *supra,* at 349–64.

### Federal Tort Claims Act

 As noted in *Henderson v. United States,* 785 F.2d 121 (4th Cir.1986), plaintiffs must satisfy certain prerequisites before filing a civil action under the FTCA. *Id.* at 123. "The FTCA clearly provides that, prior to bringing an action against the United States in federal court, a claimant 'shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency.'" *Id.* (quoting 28 U.S.C. § 2675(a)); *see Plyler v. United States,* 900 F.2d 41, 42 (4th Cir.1990). Multiple plaintiffs must satisfy the jurisdictional requirements individually. *Muth v. United States,* 1 F.3d 246, 249 (4th Cir.1993). Further, "[i]t is well-settled that the requirement

of filing an administrative claim is jurisdictional and may not be waived." *Henderson,* 785 F.2d at 123 (citing *Kielwien v. United States,* 540 F.2d 676, 679 (4th Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976)). The Fourth Circuit strictly construes the FTCA's terms, which are prescribed by Congress as conditions of the federal government's limited waiver of sovereign immunity. *Thigpen v. United States,* 800 F.2d 393, 394 (4th Cir.1986) (citation omitted).

FTCA § 1346(b)(1) requires federal courts to determine the Government's liability in accordance with the law of the state in which the alleged acts of negligence occurred. In this case, the Government argues that West Virginia treats an action for loss of consortium as the separate and independent claim of the uninjured spouse. A significant number of courts have found that when loss of consortium is a separate and independent claim under applicable state law, it must be expressly raised in an administrative claim to satisfy the FTCA's jurisdictional requirements. *See Pipkin v. United States Postal Service,* 951 F.2d 272, 273 (10th Cir.1991); *Dondero v. United States,* 775 F.Supp. 144, 148–49 (D.Del.1991); *Wozniak v. United States,* 701 F.Supp. 259, 262 (D.Mass.1988) (citing *Manko v. United States,* 830 F.2d 831, 837 (8th Cir.1987); *Johnson v. United States,* 704 F.2d 1431, 1442 (9th Cir.1983); *Allen v. United States,* 625 F.Supp. 841, 843 n. 1 (D.D.C.1986); *Murray v. United States,* 604 F.Supp. 444, 446 (E.D.Pa.1985); *Swizdor v. United States,* 581 F.Supp. 10, 12 (S.D.Iowa 1983); *Collins v. General Motors Corp.,* 101 F.R.D. 1 (W.D.Pa.1982); *Stephan v. United States,* 490 F.Supp. 323, 324 (W.D.Mich. 1980); *Walker v. United States,* 471 F.Supp. 38, 42 (M.D.Fla.1978); *Heaton v. United States,* 383 F.Supp. 589, 590–91 (S.D.N.Y. 1974)).

### Loss of Consortium Actions in West Virginia

 West Virginia recognizes that a loss of consortium action is distinct from the injured spouse's underlying tort claim. The West Virginia Supreme Court of Appeals has determined that consortium is a legally protected right. *See Poling v. Motorists Mutu-*

al Insurance Co., 192 W.Va. 46, 49, 450 S.E.2d 635 (1994) (each spouse has a right to consortium); Gault v. Monongahela Power Co., 159 W.Va. 318, 328, 223 S.E.2d 421 (1976) (same); Shreve v. Faris, 144 W.Va. 819, 824, 111 S.E.2d 169 (1959) ("Loss of consortium by a husband resulting from injuries sustained by his wife is a right which gives rise to damages."). The right to consortium is "peculiar and exclusive" to each spouse and may not be asserted by the other. Shreve, 144 W.Va. at 824, 111 S.E.2d 169; see Warner v. Hedrick, 147 W.Va. 262, 266–67, 126 S.E.2d 371 (1962) (consortium is "personal to the plaintiff and can accrue to no one else"). Because the loss of consortium action compensates a spouse for loss of his or her individual rights in the marriage relationship, the action is independent of the injured spouse's tort claim. See, e.g., Poling, 192 W.Va. at 49, 450 S.E.2d 635 (wife has separate cause of action for loss of consortium arising out of alleged bad faith insurance practices); Hardy v. Hardy, 186 W.Va. 496, 500, 413 S.E.2d 151 (1991) ("The uninjured spouse has his or her separate and equally personal right to an action for loss of consortium.") (quoting Amato v. Amato, 180 N.J.Super. 210, 434 A.2d 639, 643 (1981)); Shreve, 144 W.Va. at 822, 111 S.E.2d 169 ("[P]rior to the institution of [the husband's loss of consortium action] the wife of the plaintiff instituted a separate action against the defendant and obtained a judgment ... for her injuries and the pain suffered by her as a result of her injuries." ) (emphasis added); RESTATEMENT (SECOND) OF TORTS § 693 cmt. g (1976) (noting that "[t]he invasion of the deprived spouse's interests in the marriage is a separate tort against that spouse"). A loss of consortium claim is derivative only in the sense that the claim depends on an injury to another. Clearly, the claim asserts a spouse's independent rights in the marriage relationship. See Baio, supra, at 1351–54.

Although the loss of consortium claim is a separate cause of action, plaintiffs commonly join loss of consortium and tort actions. See King v. Bittinger, 160 W.Va. 129, 231 S.E.2d 239 (1976); Gault v. Monongahela Power Co., 159 W.Va. 318, 223 S.E.2d 421 (1976); Higginbotham v. City of Charleston, 157 W.Va. 724, 204 S.E.2d 1 (1974); see also Belcher v. Goins, 184 W.Va. 395, 403, 407, 400 S.E.2d 830 (1990) (noting in analogous context of loss of parental consortium actions that "[a] claim for parental consortium ordinarily must be joined with the injured parent's action against the alleged tortfeasor"); cf. Weaver v. Union Carbide Corp., 180 W.Va. 556, 558, 378 S.E.2d 105 (1989) (determining that loss of consortium claim may be brought without tort claim under certain circumstances). Indeed, the success of a loss of consortium claim may hinge on the underlying tort action. That the two claims are interrelated and may be joined, however, does not detract from the notion that the claims are distinct. "The invasion of the deprived spouse's interests in the marriage is a separate tort against that spouse, although it is conditioned upon factors that also constitute a tort against the impaired spouse." RESTATEMENT (SECOND) OF TORTS § 693 cmt. g (1976).

This Court is of the opinion that the West Virginia Supreme Court of Appeals recognizes a loss of consortium claim as an independent cause of action. Therefore, the FTCA required Mr. DuPont to submit his claim for administrative determination before bringing it in federal court. There is no evidence that Mr. DuPont joined Mrs. DuPont's administrative claim, and a spouse may not presume that his or her own independent claim is automatically raised or implied in the administrative claim of the other spouse. By failing to respond to the Government's motion to dismiss and relying solely on the complaint's jurisdictional allegations, Mr. DuPont has failed to persuade this Court that he submitted a loss of consortium claim for the Postal Service's administrative review. The Court **FINDS** that Mr. DuPont's failure to submit his loss of consortium claim for the Postal Service's administrative review renders this Court without subject matter jurisdiction over the claim. Accordingly, the Court **GRANTS** the Government's motion to dismiss Philip DuPont's claim for lack of subject matter jurisdiction and **ORDERS** his loss of consortium claim dismissed.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.