613 S.E.2d 87

**Peggy Frances MILLER, Plaintiff Below, Appellant,**

v.

**Yuel Vance MILLER, Defendant Below, Appellee.**

No. 31634.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2005.

Decided Feb. 10, 2005.

---

H. Beth Sears, Hancock & Sears, Ravenswood, for the Appellant.

Leah R. Boggs, Adams, Fisher & Boggs, PLLC, Ripley, for the Appellee.

PER CURIAM.

The appellant herein and plaintiff below, Peggy Frances Miller (hereinafter referred to as "Mrs. Miller"), appeals from an order entered June 6, 2003, by the Circuit Court of Jackson County. By that order, the circuit court determined that the settlement proceeds of a lawsuit alleging fraud in the terms of a loan obtained by her then-husband, the appellee herein and defendant below, Yuel Vance Miller (hereinafter referred to as "Mr. Miller"), to purchase a family vehicle during the marriage constituted separate property that was not subject to equitable distribution.

On appeal to this Court, Mrs. Miller contends that such settlement proceeds are, in fact, marital property for purposes of equitable distribution. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we reverse the circuit court's ruling and find the settlement proceeds at issue herein to be marital property. Accordingly, we remand this case to the Circuit Court of Jackson County for further proceedings consistent with this opinion, including the equitable distribution of the aforementioned settlement monies.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. and Mrs. Miller were married on October 22, 1958. They separated on June 19, 2001, and thereafter Mrs. Miller, alleging irreconcilable differences, filed for divorce in the Family Court of Jackson County. Mr. Miller answered the complaint, denying the existence of irreconcilable differences. Following a hearing on the matter, the family court entered a final order of divorce on February 28, 2003, whereby the parties waived spousal support and all of their property was distributed by equitable distribution. At issue in this proceeding is the disposition of monies Mr. Miller received in settlement of fraud claims he had asserted against White Chrysler–Plymouth–Dodge of Ripley, Inc. (hereinafter referred to as "White"), which sum the family court determined to be marital property subject to equitable distribution.

In August, 1996, Mr. and Mrs. Miller purchased an automobile from White, which they intended to use as a family car. During the course of this purchase, Mr. Miller executed a promissory note; Mrs. Miller did not sign this document. Thereafter, the Millers discovered that, unbeknownst to them, the terms of the promissory note had been al-

tered to include a balloon payment in the terms thereof. In light of the fraudulent nature of this transaction, Mr. Miller filed suit against White and received $15,363.85 in settlement of his claim.[1] Mr. Miller received the settlement proceeds after Mrs. Miller had filed for divorce, but before the circuit court entered its final order of divorce; such monies have been held in escrow by Mr. Miller's attorney since their receipt. Upon the parties' separation, Mr. Miller kept this vehicle and, throughout the divorce proceedings, has conceded that any net equity attributable to this vehicle is marital property because the vehicle was purchased during the parties' marriage and intended to serve as a family car.

Resolving the parties' dispute as to the nature of these settlement proceeds, the family court found and determined that

[t]he parties were awarded $15,363.85 from White Chrysler Dodge, as a result of a case against Mountaineer Federal Credit Union for fraud. Mr. Miller was a named plaintiff in the case, but Mrs. Miller was not. The court finds that this was a tort that occurred during the marriage and should be treated as marital property.

. . . .

Mr. Miller shall pay to Mrs. Miller one-half of the White Chrysler Dodge lawsuit proceeds, or $7,681.93.

. . . .

The court will order a temporary stay on the distribution of the issue regarding White/Chrysler/Dodge money only, pending appeal.

Following the family court's determination that the aforementioned settlement proceeds were marital property, Mr. Miller appealed to the Circuit Court of Jackson County on March 31, 2003, challenging said rulings.

Upon consideration of this matter, the circuit court concluded, by order entered June 6, 2003, that the family court had erred by classifying the White settlement monies as

---

1. The total amount Mr. Miller received in settlement of his claim was $23,765.99, which included forgiveness of the fraudulent loan balance that had been added to Mr. Miller's promissory note through the balloon payment language. After the payment of attorney's fees and litigation ex-

penses, the net amount of the settlement at issue in this appeal is $15,363.85. During settlement, White also cleared any negative items appearing on Mr. Miller's credit report resulting from the promissory note transaction.

marital property and subjecting them to equitable distribution. In so ruling, the court found

> [o]n or about August 1996, Respondent [Mr. Miller] purchased a new automobile from White Chrysler Plymouth Dodge of Ripley, Inc[.], in Ripley, West Virginia. Incident to the purchase, Respondent executed a promissory note payable to Bank One. It was later discovered that a fraudulent "balloon payment" had been inserted into the promissory note subsequent to the same being executed by Respondent. Civil litigation followed and the Respondent ultimately received the net amount of $15,363.85 in compensation for "contract fraud" of which he was a victim. The vehicle was purchased during the marriage and it[s] value and equity are not in dispute. The dispute is whether the tort proceeds of $15,363.85 are marital or separate property. The Family Court found that the vehicle was purchased during the marriage and was, therefore, marital property. Likewise the Family Court found that the tort was committed during the marriage and the resulting funds should be treated as marital property.

(Emphasis in original). Based upon these findings, the circuit court then determined that

> the settlement proceeds are the separate property of Respondent, and therefore not subject to equitable distribution.
>
> . . . .
>
> ... The settlement proceeds were paid to Respondent to compromise his tort claim against White Chrysler Plymouth Dodge. Said claim was brought solely by the Respondent, as he was the only one with standing to bring such a suit since his was the only name affixed to the fraudulent contract. Petitioner [Mrs. Miller] did not sign the note. More importantly, the fraudulent term of the note was uncovered prior to any payment of the "balloon" installment. Therefore, the marital estate was not diminished by the fraudulent term of the contract because no payment was ever made, *from any source*, toward the "balloon" installment.

> In addition, nearly all of the damages awarded by courts in fraud cases have been termed "noneconomic." The damages in this case were paid to Respondent in satisfaction of his fraud claim. Therefore, the court finds that the damages awarded in this case are noneconomic in nature. Respondent was not seeking, and did not receive, compensation for economic losses such as past wages, medical expenses, or other items that could diminish the marital estate. These damages are more analogous to punitive damages or damages for pain and suffering than compensatory damages. As such, the damages are the separate property of the Respondent and not subject to equitable distribution.

From this adverse ruling, Mrs. Miller appeals to this Court.

## II.

### STANDARD OF REVIEW

On appeal to this Court, Mrs. Miller challenges the circuit court's characterization of the litigation settlement proceeds at issue herein as separate, rather than marital, property. We previously have held that,

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). *See also* Syl. pt. 2, *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 (2003) ("In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* re-

view."). Mindful of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

■ The sole issue presented for resolution by the instant appeal is whether the settlement monies received by Mr. Miller in satisfaction of his fraudulent contract claim constitute marital property or separate property for purposes of equitable distribution. Considering this issue, the family court determined that the settlement proceeds are marital property, but the circuit court deemed them to be Mr. Miller's separate property.

■ Appealing from the circuit court's ruling, Mrs. Miller contends that the circuit court erred by finding that the settlement proceeds were Mr. Miller's separate property. Rather, she argues, the settlement proceeds are marital property subject to equitable distribution. To support her position, Mrs. Miller relies upon Syllabus point 2, in part, of *Kapfer v. Kapfer*, 187 W.Va. 396, 419 S.E.2d 464 (1992) (per curiam), wherein we previously have held that

> "[the] W. Va.Code, ... defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syllabus Point 3, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990).

In this regard, Mrs. Miller suggests that because the vehicle in question was a family vehicle, acquired with marital funds, and was, in and of itself, marital property, the fact that only Mr. Miller's name appears on the loan documents is irrelevant, and the settlement proceeds arising from the vehicle's acquisition should likewise be designated marital property.

By contrast, Mr. Miller disputes Mrs. Miller's contention that the circuit court committed error and asserts that the settlement proceeds he received in satisfaction of his contract claim were, in fact, his own separate property and thus not subject to equitable distribution. In support of his position, Mr. Miller asserts that he alone signed the promissory note, and his credit alone had the potential to be negatively affected by the fraudulent contract. As such, any damages he sustained as a result of the transaction with White were suffered solely by him and not by Mrs. Miller, and, thus, he is entitled to the entirety of the settlement proceeds therefrom. Moreover, insofar as personal injury awards intended to compensate a spouse for noneconomic damages such as pain and suffering have been declared to be the injured spouse's personal property, *citing Hardy v. Hardy*, 186 W.Va. 496, 413 S.E.2d 151 (1991), and given that damages recoverable in fraud actions may include pain and suffering, punitive damages, and annoyance and inconvenience, Mr. Miller suggests that the damages he has recovered are clearly noneconomic damages that constitute separate, rather than marital, property.

■ During the proceedings underlying this appeal and also in arguments before this Court, the nature of the lawsuit brought and settled by Mr. Miller has been characterized as a personal injury action in tort, when, in all actuality, the claims asserted by Mr. Miller sound in contract. Irrespective of the character of the claim that yielded the settlement proceeds at issue herein, the issue presented for our resolution in the case *sub judice* is a simple question of how property should be disposed of in the course of the equitable distribution of the Millers' marital estate. Simply stated,

> [e]quitable distribution under W. Va. Code, 48–2–1, *et seq.*,[2] is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in ac-

---

**2.** In 2001, the West Virginia Legislature recodified the statutes governing domestic relations in West Virginia. The statutes pertaining to equitable distribution can now be found at W. Va.Code § 48–7–101, *et seq.*

cordance with the principles contained in W. Va.Code, 48–2–32 [3].

Syl. pt. 1, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990) (footnotes added).

To accomplish the first step of this process, which is the crux of the matter at issue herein, we need simply look to the statutory definitions of marital and separate property. W. Va.Code § 48–1–233 (2001) (Repl.Vol. 2004) defines "marital property" as

(1) *All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held,* held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions in this state, except that marital property does not include separate property as defined in section 1–23[7] [§ 48–1–23[7]]; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

The definition of "marital property" contained in this section has no application outside of the provisions of this article, and the common law as to the ownership of the respective property and earnings of a husband and wife, as altered by the provisions of article 29 [§§ 48–29–101 et seq.] of this chapter and other provisions of this code, are not abrogated by implication or otherwise, except as expressly provided for by the provisions of this article as such provisions are applied in actions brought under this article or for the enforcement of rights under this article.

(Emphasis added).

"Separate property," as defined by W. Va. Code § 48–1–237 (2001) (Repl.Vol.2004), encompasses

(1) Property acquired by a person before marriage;

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;

(5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

Applying these definitions to the facts presently before us, it is clear that the settlement proceeds in question are, in fact, marital property. W. Va.Code § 48–1–233 plainly states that "marital property" includes "[a]ll property and earnings acquired by either spouse during a marriage, including every valuable right and interest, . . . whether individually [or jointly] held." Thus, Mr. Miller's claim for contract fraud against White clearly constituted a "valuable interest" that Mr. Miller acquired during the marriage insofar as he both signed the underlying loan document and discovered the fraud while he and Mrs. Miller were married and cohabiting. As such, Mr. Miller's litigation interest constituted marital property. It stands to rea-

---

**3.** The recodified version of this statute is contained in W. Va.Code § 48–7–104 (2001) (Repl. Vol.2004).

son, then, that Mr. Miller's recovery on said claim likewise would be marital property, even though the settlement proceeds were received after the parties had separated, because such recovery would not have been possible had it not been for the marital property litigation interest he earlier had acquired. *See Van de Loo v. Van de Loo*, 346 N.W.2d 173, 176 (Minn.Ct.App.1984) (indicating that "the purpose of the recovery rather than the timing of the recovery controls its characterization"); *Amato v. Amato*, 180 N.J.Super. 210, 219, 434 A.2d 639, 643 (1981) ("The purpose for which the property is received should control." (internal quotations and citation omitted)).

■ Moreover, there is no evidence before this Court to suggest that Mr. Miller's contract fraud claim and resulting recovery should, instead, be treated as separate property. As defined by W. Va.Code § 48–1–237, "separate property" contemplates property that can, in no way, be linked to the marital estate. That simply is not the case with the controverted property at issue in this case. During the parties' divorce proceedings, Mr. and Mrs. Miller both agreed that the vehicle acquired by the fraudulent loan application was intended to, and actually did serve as, a family car. Additionally, the parties agreed, and the family court and circuit court so found, that the equity in this vehicle existing on the date the parties separated should be treated as marital property subject to equitable distribution because marital funds had been used to attain said equity by satisfying the marital debt incurred incident to the car's purchase.[4] In light of this clear indication that the parties intended the vehicle for which Mr. Miller signed the loan application and upon which he later based his claim of contract fraud to be an asset of the marital estate, the evidence does not support the circuit court's finding that the settlement

proceeds Mr. Miller received should, instead, be considered to be his separate property.

As a final matter, we would be remiss if we did not acknowledge the strong preference in the law of this State to denominate controverted assets as marital property rather than as separate property.

> W. Va.Code, 48–2–1(e)(1)(1986),[5] defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.

Syl. pt. 3, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990) (footnote added). Even without this presumption, however, we are convinced that the settlement proceeds Mr. Miller received in satisfaction of his contract fraud claim are marital, not separate, property based upon our analysis of the applicable statutory law and the facts before us. Accordingly, we find that the circuit court abused its discretion and reverse its ruling finding that the settlement proceeds received by Mr. Miller were separate property. We additionally remand this case for further proceedings consistent with this opinion, including the equitable distribution of the settlement proceeds at issue herein. *See W. Va. Code § 48–7–101 (2001) (Repl.Vol.2004)* ("Except as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties.").

### IV.

### CONCLUSION

For the foregoing reasons, the June 6, 2003, decision of the Circuit Court of Jackson County is hereby reversed, and this case is

---

4. We note that our finding that the loan incurred by Mr. Miller incident to the purchase of the parties' family car constituted a marital debt is consistent with the rulings of another court that has directly considered similar matters of equitable distribution. *See Camisa v. Camisa*, 168 Vt. 563, 565, 714 A.2d 641, 643 (1998) (entry order) (concluding that loan obtained solely by husband

to purchase family car and which husband and wife had discussed before its procurement was a "debt ... incurred on behalf of the marital estate").

5. The recodification of this statute is located at W. Va.Code § 48–1–233 (2001) (Repl.Vol.2004).

remanded for further proceedings consistent with this opinion.

Reversed and Remanded.