639 S.E.2d 866

Patricia E. FITZGERALD, Petitioner Below, Respondent,

v.

Earl L. FITZGERALD, Respondent Below, Petitioner.

No. 33043.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2006.

Decided Nov. 30, 2006.

Dissenting Opinion of Justice Albright Dec. 8, 2006.

Concurring Opinion of Justice Benjamin Jan. 4, 2007.

---

Shawn D. Bayliss, Bayliss & Phalen, PLLC, Charleston, for the Petitioner, Earl L. Fitzgerald.

Beverly S. Selby, Charleston, for the Respondent, Patricia Fitzgerald.

DAVIS, Chief Justice:

This case comes before the Court upon questions certified by the Circuit Court of Putnam County inquiring whether a spouse's workers' compensation permanent total disability benefits constitute marital property or separate property for purposes of equitable distribution, and, based upon the classification of such benefits, how they should then be distributed to the parties. Upon a review of the parties' arguments, the record of the proceedings below, and the pertinent authorities, we answer the certified questions and remand this matter for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this matter are not disputed by the parties. Patricia Fitzgerald (hereinafter "Mrs. Fitzgerald") and Earl L. Fitzgerald (hereinafter "Mr. Fitzgerald") were married on May 28, 1989. Thereafter, on June 20, 1990, Mr. Fitzgerald sustained debilitating injuries in the course of and as a result of his employment. During the parties' marriage, Mr. Fitzgerald received workers' compensation benefits of approximately $90,654.27. The parties separated on January 4, 2002.

Subsequently, on October 25, 2002, the Workers' Compensation Division entered a final decision and awarded Mr. Fitzgerald permanent total disability benefits, retroactive to December 1, 1992, the date upon which he was determined to be permanently and totally disabled by a decision of the Social Security Administration. As a result of this ruling, Mr. Fitzgerald received additional workers' compensation benefits in the amount of $106,406.62 as a lump sum back award to compensate him for the period from December 1, 1992, through October 24, 2001, during which period the parties were still married and living together as husband and wife. Mr. Fitzgerald's actual receipt of this lump sum payment, however, occurred during the parties' separation.

On about January 10, 2002, Mrs. Fitzgerald filed a petition for divorce in the Family Court of Putnam County. The family court

bifurcated the proceedings and granted the parties a divorce by order entered December 31, 2002.[1] Deciding the appropriate disposition of Mr. Fitzgerald's workers' compensation benefits, the family court, by order entered April 7, 2004, determined that both of the aforementioned sums of workers' compensation benefits constituted marital property subject to equitable distribution. In short, the family court ruled that the first amount of such benefits in the amount of $90,654.27 was marital property because it was received during the parties' marriage. The family court further concluded that Mr. Fitzgerald's subsequent lump sum award of $106,406.62, though received after the parties had separated, nevertheless was also marital property because it constituted retroactive workers' compensation benefits payments for a period of time during which the parties were still married and cohabiting. As for the proper distribution of such benefits, the family court determined that Mr. Fitzgerald was entitled to claim twenty-five percent of such benefits as his separate property as compensation for the pain and suffering he endured as a result of his disabling injury. The family court then distributed the remaining benefits, which constituted marital property, equally between the parties.

To arrive at the precise amounts attributable to each party, the family court added together the two benefits amounts ($90,-654.27 + $106,402.62 = $197,056.89); calculated Mr. Fitzgerald's twenty-five percent separate property for pain and suffering based upon the total of these two awards (25% × $197,056.89 = $49,264.22); deducted Mr. Fitzgerald's portion for pain and suffering from only his lump sum award ($106,-402.62—$49,264.22 = $57,138.40); and awarded one-half of the remaining amount of the lump sum award to each party as marital property ($57,138.30 / 2 = $28,569.20).[2]

From this ruling, Mrs. Fitzgerald filed a motion to reconsider, complaining that the family court should have deducted Mr. Fitzgerald's twenty-five percent pain and suffer-

ing separate property from each of his two benefits payments rather than subtracting the amounts attributable to each award all from his $106,406.62 lump sum award. The family court denied Mrs. Fitzgerald's motion to reconsider.

Both parties then appealed the family court's ruling to the circuit court, with Mr. Fitzgerald asserting that the entire amount of the $106,406.62 lump sum award should be declared his separate property and Mrs. Fitzgerald arguing that the entire amount of the $106,406.62 lump sum award should be designated marital property subject to equitable distribution. Determining that the question of the proper distribution of an award of workers' compensation benefits was a matter of first impression in West Virginia, the circuit court, by order entered April 28, 2005, certified the following questions of law to this Court:

**QUESTION NO. 1:** What portion, if any, of a lump sum Workers' Compensation permanent total disability award is considered a marital asset?

**COURT'S RESPONSE:** The Court **FINDS** that any portion of a lump sum Workers' Compensation permanent total disability award that represents payments that should have been received during the period of the parties' marriage are [sic] considered a marital asset.

**QUESTION NO. 2:** If so, what portion, if any, of a lump sum Workers' Compensation permanent total disability award should be considered an award for pain and suffering?

**COURT'S RESPONSE:** The Circuit Court adopts the analysis of the Family Court and **FINDS** that the 25% of the Workers' Compensation award for pain and suffering is the injured spouse's separate property.

**QUESTION NO. 3:** How should the family court, and upon review the circuit court, distribute that portion, if any, of a lump sum Workers' Compensation perma-

---

1. The family court's order of December 31, 2002, which granted the parties a divorce, was entered nunc pro tunc to June 12, 2002.

2. Presumably, the family court determined that the parties, during their marriage, had consumed

Mr. Fitzgerald's $90,654.27 in benefits he had received earlier and, thus, that such sum did not need to be equitably distributed to the parties. In any event, the parties do not assign error to the lower courts' rulings regarding this amount. *See* note 4, *infra.*

nent total disability award that is considered marital property?

**COURT'S RESPONSE:** The Court **FINDS** that the remaining lump sum Workers' Compensation permanent total disability award would then be subject to equitable distribution as any other marital asset.

**QUESTION NO. 4:** Is the injured spouse entitled to any reimbursement of part of a lump sum Workers' Compensation permanent total disability award that was received prior to the parties' separation?

**COURT'S RESPONSE:** The Court **FINDS** that the injured spouse is not entitled to any reimbursement unless there is a showing that this lump sum payment has been kept in some segregated account and was not consumed during the marriage. The Court **FINDS** that the portion of a Workers' Compensation permanent total disability award that was received prior to the parties' separation would have been consumed by the parties during the marriage and the injured spouse is not entitled to be reimbursed his 25% by the non-injured spouse.

By order entered March 2, 2006, this Court accepted these certified questions for review.

## II.

## STANDARD OF REVIEW

■ The issues presented by the instant proceeding involve questions of law certified to this Court for resolution. We previously have held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). *See also* Syl. pt. 1, *Bower v. Westinghouse Elec.*

3. We previously have held that this Court has the authority to reformulate questions certified to it for resolution:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code,* 51–1A–1, *et seq.* and *W. Va.Code,* 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

*Corp.,* 206 W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."); Syl. pt. 1, *Light v. Allstate Ins. Co.,* 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."). Mindful of this standard, we proceed to consider the questions presented for our determination.

## III.

## DISCUSSION

■ This case presents four certified questions from the Circuit Court of Putnam County for our consideration and determination. By the authority vested in us to do so,[3] we have determined that the most efficient way to resolve these questions is to reformulate and consolidate them into a single query as follows:

In a divorce proceeding, is an injured spouse's award of workers' compensation permanent total disability benefits, which corresponds to the spouse's inability to work while the parties were married and cohabiting, considered to be (1) a replacement for the wages he/she would have earned but for his/her work-related injury and thus marital property, which would be subject to the rules of equitable distribution, or (2) the spouse's personal award for his/her pain and suffering resulting from his/her work-related injury and thus his/her own separate property, which would not be subject to the rules of equitable distribution?

During its consideration of these issues, the circuit court upheld the family court's ruling that twenty-five percent of the lump sum[4]

Syl. pt. 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993). *See also Zelenka v. City of Weirton,* 208 W.Va. 243, 245, 539 S.E.2d 750, 752 (2000) (stating that "this Court will not consider certified questions not necessary to the decision of a case" (citation omitted)).

4. On appeal to this Court, the parties do not dispute the lower courts' rulings regarding Mr. Fitzgerald's receipt of $90,654.27 in workers' compensation permanent total disability benefits. Rather, the assigned errors all pertain to the characterization and distribution of Mr. Fitzgerald's subsequent $106,402.62 lump sum award of

permanent total disability award Mr. Fitzgerald received for his work-related injuries constituted his separate property and thus was not subject to equitable distribution when he and his wife, Mrs. Fitzgerald, divorced. The court found that the remaining seventy-five percent of Mr. Fitzgerald's permanent total disability award was marital property and thus subject to equitable distribution.

Before this Court, Mr. Fitzgerald argues that the entire amount of the lump sum permanent total disability award he received is in the nature of compensation for his pain and suffering that resulted from his work-related injury insofar as such benefits constitute his sole remedy against his employer. Because his workers' compensation benefits constitute a personal injury award, then, Mr. Fitzgerald argues that they should be classified as his separate property. By contrast, Mrs. Fitzgerald contends that the entire amount of Mr. Fitzgerald's lump sum permanent total disability award constitutes marital property because it replaces wages he was unable to earn during the parties' marriage. In this regard, she argues that the statutory law governing workers' compensation in West Virginia clearly indicates that workers' compensation benefits are intended to function as a replacement for an employee's lost wages occasioned by his/her work-related injury and are specifically calculated based upon an employee's average weekly wage. *Citing* W. Va.Code § 23–4–6 (2005) (Repl. Vol.2005). Moreover, Mrs. Fitzgerald suggests that these statutes do not contemplate that such benefits will be paid to compensate an injured employee for his/her pain or suffering associated with such an injury. Thus, Mrs. Fitzgerald asserts, workers' compensation benefits received during a parties' marriage or that correspond with the period of time during which the parties were married should be classified as marital property subject to equitable distribution.

Our consideration of this matter necessarily begins with a review of the law of equitable distribution in West Virginia.

Equitable distribution under W. Va. ·Code, 48–2–1, *et seq.*,[5] is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W. Va.Code, 48–2–32.[6]

Syl. pt. 1, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990) (footnotes added). "Marital property" is defined by statute as including

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions in this state, except that marital property does not include separate property as defined in section 1–23[7] [§ 48–1–23[7]]; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

The definition of "marital property" contained in this section has no application

---

permanent total disability benefits that compensated him for the period from December 1, 1992, through October 24, 2001, during which time the parties were married and cohabiting. *See supra* note 2.

**5.** The West Virginia Legislature, in 2001, recodified the statutes governing domestic relations in this State; statutes addressing equitable distribution are now codified at W. Va.Code § 48–7–101, *et seq.*

**6.** The current version of this statute is recodified at W. Va.Code § 48–7–104 (2001) (Repl.Vol. 2004).

outside of the provisions of this article, and the common law as to the ownership of the respective property and earnings of a husband and wife, as altered by the provisions of article 29 [§§ 48–29–101 et seq.] of this chapter and other provisions of this code, are not abrogated by implication or otherwise, except as expressly provided for by the provisions of this article as such provisions are applied in actions brought under this article or for the enforcement of rights under this article.

W. Va.Code § 48–1–233 (2001) (Repl.Vol. 2004). For purposes of equitable distribution, nonmarital or "separate" property consists of

(1) Property acquired by a person before marriage;

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;

(5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

W. Va.Code § 48–1–237 (2001) (Repl.Vol. 2004).

■ Despite these delineations between marital and separate property, there nevertheless exists a preference to classify property as marital rather than separate.

"W. Va.Code, 48–2–1(e)(1) (1986) [W. Va.Code § 48–1–233 (2001) (Repl.Vol. 2004)], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syl. pt. 3, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990).

Syl. pt. 2, *Staton v. Staton,* 218 W.Va. 201, 624 S.E.2d 548 (2005). After property has been denominated marital, it typically is divided equally between the parties. "Except as otherwise provided in this section, upon every judgment of … divorce …, the court shall divide the marital property of the parties equally between the parties." W. Va. Code § 48–7–101 (2001) (Repl.Vol.2004). *See also* W. Va.Code § 48–7–103 (2001) (Repl. Vol.2004) (setting forth considerations to rebut presumption that marital property should be divided equally between the parties).[7]

7. The full text of W. Va.Code § 48–7–103 (2001) (Repl.Vol.2004) directs that,

[i]n the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:

(A) Employment income and other earnings; and

(B) Funds which are separate property.

(2) The extent to which each party has contributed to the acquisition, preservation and maintenance or increase in value of marital property by nonmonetary contributions, including, but not limited to:

(A) Homemaker services;

(B) Child care services;

(C) Labor performed without compensation, or for less than adequate compensation, in a family business or other business entity in which one or both of the parties has an interest;

(D) Labor performed in the actual maintenance or improvement of tangible marital property; and

(E) Labor performed in the management or investment of assets which are marital property.

(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:

■ The primary issue presented for our resolution in this case is whether workers' compensation permanent total disability benefits are marital property or separate property. In order to ascertain the nature of these benefits, we must first determine why such benefits are paid to an injured worker. Pursuant to W. Va.Code § 23-4-7(a) (2005) (Repl.Vol.2005), "the primary objectives of the workers' compensation system ... are to provide benefits to an injured claimant promptly and to effectuate his or her return to work at the earliest possible time ...." With specific respect to the injury sustained by Mr. Fitzgerald, permanent total disability benefits are intended to compensate an injured worker who has been determined to be unable to return to his/her employment as a result of his/her work-related injury: "[p]ermanent total disability awarded under workers' compensation is part of a comprehensive plan designed to rectify the results of an injury in the workplace." *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 548, 482 S.E.2d 162, 165 (1996). Moreover, "[t]he amount of permanent total disability benefits is determined under a statutory scheme that involves diverse factors, including the nature of the injury, the average wages of the claimant over a relatively short time, and the average wages earned in the State." *Id.*, 198 W.Va. at 549, 482 S.E.2d at 166 (citation omitted).

■ However, "[w]orkers' compensation has never been intended to make the employee whole-it excludes benefits for pain and suffering, for loss of consortium, and it provides a cap on wage benefits." *Bias v. Eastern Assoc. Coal Corp.*, 220 W. Va. 190, 208, 640 S.E.2d 540 at 558 (No. 32778 June 8, 2006) (Davis, C.J., concurring) (internal quotations and citation omitted). In other words, "[t]he payments to the claimants and

other benefits are in lieu of such elements of damage in the common law tort system as lost wages, lost earning capacity, reimbursement of past and future medical expenses, past and present pain and suffering, emotional distress, and other factors." *Boan*, 198 W.Va. at 548, 482 S.E.2d at 165. *Accord Zelenka v. City of Weirton*, 208 W.Va. 243, 247-48, 539 S.E.2d 750, 754-55 (2000) (recognizing "the failure of workers' compensation law to provide compensation for 'elements of damages such as pain and suffering ...'" (quoting *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 610, 425 S.E.2d 551, 565 (1992))); *Brooks v. City of Weirton*, 202 W.Va. 246, 252, 503 S.E.2d 814, 820 (1998) (same); *Henry v. Benyo*, 203 W.Va. 172, 179-80, 506 S.E.2d 615, 622-23 (1998) (stating that "losses that are not covered by workers' compensation" include "pain and suffering, loss of enjoyment of life, [and] loss of consortium"). *See also Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 511 n. 13, 345 S.E.2d 791, 810 n. 13 (1986) (distinguishing workers' compensation benefits from awards for pain and suffering and concluding that, "[u]nlike workers' compensation, awards for pain and suffering in personal injury actions ... should not be based upon pre-determined schedules").

Our prior cases recognizing that an award of permanent total disability benefits constitutes wage replacement and does not include monies for the injured employee's pain and suffering are consistent with the statutory scheme for the determination of the amount of such benefits to which an injured worker is entitled. With respect to an award of permanent total disability benefits, such as those at issue in this case, W. Va.Code § 23-4-6(d) (2005) (Repl.Vol.2005) directs, in pertinent part, that

[f]or all awards of permanent total disability benefits that are made on or after

(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and

(B) Foregoing by either party of employment or other income-earning activity through an understanding of the parties or at the insistence of the other party.

(4) The extent to which each party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties:

Provided, That except for a consideration of the economic consequences of conduct as provided for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property.

The parties do not contend that the distribution of Mr. Fitzgerald's lump sum permanent total disability award should be altered based upon the criteria enumerated in this section, and we do not find this provision instructive to our resolution of the instant controversy.

the second day of February, one thousand nine hundred ninety-five, including those claims in which a request for an award was pending before the division or which were in litigation but not yet submitted for a decision, then benefits shall be payable until the claimant attains the age necessary to receive federal old age retirement benefits under the provisions of the Social Security Act, 42 U.S.C. §§ 401 and 402, in effect on the effective date of this section. The claimant shall be paid benefits so as not to exceed a maximum benefit of sixty-six and two-thirds percent of the claimant's average weekly wage earnings, wherever earned, at the time of the date of injury not to exceed one hundred percent of the average weekly wage in West Virginia. The minimum weekly benefits paid under this section shall be as is provided for in subdivision (b) of this section. . . . [8]

(Footnote added). Thus, it is apparent that the calculation of the amount of permanent total disability benefits to which an injured worker is entitled is calculated based upon his/her wages, and the corresponding average West Virginia weekly wage, and not upon other factors. In describing this method of calculation, the Legislature does not mention the injured employee's pain and suffering attributable to his/her workplace injury or award a specific amount or percentage of benefits as compensation therefor. See id. See also W. Va.Code § 23–4–14 (2005) (Repl. Vol.2005) (defining "average weekly wage earnings" of injured employee and "average weekly wage in West Virginia").

The Legislature's intention to treat an award of permanent total disability benefits as wage replacement, and not as an award for pain and suffering, is further evidenced by additional statutory language which re-

duces such benefits if the injured employee later receives other payments in lieu of wages such as employer-sponsored disability benefits. See W. Va.Code § 23–4–23(b) (2003) (Repl.Vol.2005). An injured employee may, under certain circumstances, also be precluded from receiving any award of permanent total disability benefits if he/she is also receiving old-age social security benefits. See W. Va.Code § 23–4–24 (2005) (Repl.Vol. 2005). Finally, an employee's receipt of actual wages may also diminish the amount of permanent total disability benefits that he/she may collect. See W. Va.Code § 23–4–25(b) (2005) (Repl.Vol.2005).

■ Given the thoroughness with which the Legislature has defined, provided directions for calculating, and limited an injured employee's right to receive an award of permanent total disability benefits, it is apparent that its silence as to the amount of such an award that represents the injured employee's pain and suffering is demonstrative of a legislative intent to exclude such a component from an award of workers' compensation permanent total disability benefits. See State ex rel. Roy Allen S. v. Stone, 196 W.Va. 624, 630 n. 11, 474 S.E.2d 554, 560 n. 11 (1996) (" 'Inclusio unius est exclusio alterius,' the expression that 'one is the exclusion of the others,' has force in this case. This doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language."). Accordingly, we hold that a workers' compensation permanent total disability award is considered to be wage replacement for the wages the injured employee would have earned but for his/her work-related injury and is not considered to be an award for the injured employee's pain and suffering resulting from such work-related injury.[9]

8. W. Va.Code § 23–4–6(b) (2005) (Repl.Vol.2005) provides, in relevant part,

> [t]he minimum weekly benefits paid under this subdivision shall not be less than thirty-three and one-third percent of the average weekly wage in West Virginia, except as provided in sections six-d [§ 23–4–6d] and nine [§ 23–4–9] of this article. In no event, however, shall the minimum weekly benefits exceed the level of benefits determined by use of the applicable federal minimum hourly wage . . . .

9. Our holding in this regard is consistent with the result reached by other states' courts considering this issue. See, e.g., Leisure v. Leisure, 605 N.E.2d 755, 758 (Ind.1993) ("The Worker's Compensation Act does not contemplate a recovery for pain and suffering. . . . [I]t is now generally accepted that worker's compensation is awarded in lieu of lost wages and not as damages for pain, suffering, and monetary loss caused by the fault of the employer." (citations omitted)); Crocker v. Crocker, 1991 OK 130, ——, 824 P.2d 1117, 1122–23 (1991) ("[Workers'] Compensation is not paid to reimburse for injuries sustained. It

We recognize that because, in most instances, workers' compensation benefits constitute an employee's exclusive remedy against his/her employer, such an award can arguably be said to include inherent characteristics of other types of damages. *See State ex rel. Boan v. Richardson,* 198 W.Va. at 550–51, 482 S.E.2d at 167–68 ("We conclude that our workers' compensation benefits for permanent total disability are more than simply a wage replacement system. While the amount of such payments is, in fact, based on the injured worker's past employment, the benefits are also defined and limited by additional factors such as the average wages in the State. The payments provided in permanent disability cases compensate for more than lost wages because, as we have pointed out, they stand in lieu of a myriad of damage elements recognized in the tort system that are not measurable by wages earned or the average wages in the State."). Nevertheless, the recurring theme in our prior opinions addressing this issue is, simply, that "workers' compensation law [fails] to provide compensation for 'elements of damages such as pain and suffering . . . .' " *Zelenka v. City of Weirton,* 208 W.Va. at 247–48, 539 S.E.2d at 754–55 (quoting *O'Dell v. Town of Gauley Bridge,* 188 W.Va. at 610, 425 S.E.2d at 565). Insofar as "[t]he right to workmen's compensation benefits is purely statutory," *Cropp v. State Workmen's Compensation Commissioner,* 160 W.Va. 621, 627–628, 236 S.E.2d 480, 484 (1977), and the Legislature has failed to specify what part of an injured employee's workers' compensation award is intended to provide reimbursement for his/her claims other than lost wages, we are constrained to conclude that the Legislature has intended workers' compensation benefits to be limited to wage replacement. Accordingly, we conclude that our isolated statement in *Boan* has been implicitly modified by our subsequent rulings on this subject. *See, e.g., Zelenka v. City of Weirton,* 208 W.Va. at 247–48, 539 S.E.2d at 754–55; *Brooks v. City of Weirton,* 202 W.Va. at 252, 503 S.E.2d at 820; *Henry v. Benyo,* 203 W.Va. at 179–80, 506 S.E.2d at 622–23.

is awarded for compensation in lieu of wages during the duration of the impairment." (foot-

■ Having determined that workers' compensation permanent total disability benefits constitute wage replacement, rather than an award for the injured employee's pain and suffering, we must now determine whether Mr. Fitzgerald's lump sum permanent total disability award constitutes marital or separate property.

During their consideration of this matter below, the family court and the circuit court both concluded that a portion of Mr. Fitzgerald's lump sum permanent total disability award was his separate property insofar as it compensated him for the pain and suffering he sustained as a result of his workplace injury. Because we have determined that such an award constitutes wage replacement and does not include a separate component for pain and suffering, the question remains as to whether Mr. Fitzgerald's lump sum award of permanent total disability benefits is marital property, subject to equitable distribution, or separate property, which is not subject to division between the parties. Two factors surrounding this lump sum award are critical to our decision of this matter: when Mr. Fitzgerald received the award in question and for what period of time such award was intended to serve as compensation for his lost wages.

■ Governing our resolution of this inquiry are the statutory definitions of "separate property," contained in W. Va.Code § 48–1–237, and "marital property," set forth in W. Va.Code § 48–1–233. We repeatedly have held that, when applying statutory law to the facts of a case, we must consider the intent of the Legislature in enacting such provision. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No.*

note omitted)).

*548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959). However, such an application of a statute's plain language is necessarily tempered by the recognition that "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. pt. 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States, Inc.,* 147 W.Va. 645, 129 S.E.2d 921 (1963). Therefore, " '[t]he plain meaning of a statute is normally controlling, except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. In such case, it is the legislative intent, rather than the strict language, that controls.' *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 128, 468 S.E.2d 733, 743 (1996)." *Keatley v. Mercer County Bd. of Educ.,* 200 W.Va. 487, 492 n. 7, 490 S.E.2d 306, 311 n. 7 (1997). Furthermore, "where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. pt. 4, in part, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958).

In the specific context of the case *sub judice,* when considering whether property is marital or separate, we have further recognized a distinct legislative preference for characterizing property as marital in nature whenever such a denomination is warranted. *See* Syl. pt. 2, *Staton v. Staton,* 218 W.Va. 201, 624 S.E.2d 548 (" 'W.Va.Code, 48–2–1(e)(1) (1986) [W. Va.Code § 48–1–233 (2001) (Repl.Vol.2004) ], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.' Syl. pt. 3, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990)."). Thus, we must consider whether Mr. Fitzgerald's lump sum award of permanent total disability benefits comes within the definition of separate property, marital property, or both separate and marital property, as well as the Legislature's preferred classification of property as marital in nature.

Initially, a reading of the statutory definitions of "separate property" and "marital property" leads to the conclusion that Mr. Fitzgerald's lump sum award is separate property because he received these monies after the parties had separated.[10] This is so because W. Va.Code § 48–1–237(5) includes within the definition of "separate property" "[p]roperty acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance." Conspicuously absent from this definition of "separate property," however, is any consideration as to the nature of the property so acquired. Under the unique facts of this case, although Mr. Fitzgerald received his lump sum award during the parties' separation, the award actually constituted wage replacement for a period of time during which the parties were married but Mr. Fitzgerald's work-related injury prevented him from working. Consequently, we must also consider the proper characterization of wages, or wage replacement as is the case herein, earned during the parties' marriage.

W. Va.Code § 48–1–233(1) defines marital property, in part, as encompassing "[a]ll property and earnings acquired by either spouse during a marriage, including every valuable right and interest[.]" Thus, by definition, both parties' wages earned during a marriage constitute marital property. *See id. Accord Butcher v. Butcher,* 178 W.Va. 33, 40, 357 S.E.2d 226, 233 (1987) (explaining that statutory definition of "marital property" "contemplates that it is property or earnings *accrued* during the marriage which form the basis for marital property" (emphasis added)). *See also* Syl. pt. 5, in part, *Metzner v. Metzner,* 191 W.Va. 378, 446 S.E.2d 165 (1994) ("Contingent and other future earned fees which an attorney might receive as compensation for cases pending at the time of a divorce should be treated as marital property for purposes of equitable distribution. However, only that portion of the fee that represents compensation for work done during the

10. The final order of the Workers' Compensation Division granting Mr. Fitzgerald his lump sum award was entered on October 25, 2002, and provided benefits for the period from December 1, 1992, through October 24, 2001, during which time the parties were married and cohabiting.

marriage is actually 'marital property' as defined by our statute."). Additionally, any right or interest in or to property acquired during a marriage is also classified as marital property. W. Va.Code § 48–1–233(1). *See also* Syl. pt. 3, *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (1977) ("A 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings.").

As we previously have discussed, Mr. Fitzgerald received his lump sum permanent total disability award while the parties were separated. However, the injury which caused Mr. Fitzgerald to become permanently and totally disabled occurred while he and Mrs. Fitzgerald were married and cohabiting, and such injury prevented him from working also while the parties were still living together as husband and wife. Thus, the wages which Mr. Fitzgerald's lump sum permanent total disability award were intended to replace were wages he would have earned during the parties' marriage but for his work-related injury. Consequently, Mr. Fitzgerald's right to receive such an award, as well as his interest therein, accrued during the parties' marriage. The fact that he did not receive his award until substantially later does not alter when his right to receive such benefits actually vested, which vesting occurred during the parties' marriage. *See* Syl. pt. 3, in part, *Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625 (1983) (recognizing notoriously "[l]ong delays in processing claims for [workers'] compensation" (internal quotations and citation omitted)). *But see Meadows v. Lewis,* 172 W.Va. at 468, 307 S.E.2d at 638 ("The [Worker's Compensation] Act is designed to compensate injured workers as speedily and expeditiously as possible in order that injured workers and those who depend upon them for support shall not be left destitute during a period of disability.").

Insofar as we have determined an award of workers' compensation permanent total disability benefits to constitute wage replacement, rather than an individual award for pain and suffering, and given that the wages which Mr. Fitzgerald's award replaced would have been earned during the parties' marriage, we find that his lump sum permanent total disability award of $106,402.62 is marital property subject to equitable distribution. To find otherwise would be to ignore the statutorily prescribed preference for classifying property as marital and would, thus, produce "a result demonstrably at odds with the intentions of the drafters." *Keatley v. Mercer County Bd. of Educ.,* 200 W.Va. at 492, 490 S.E.2d at 311 (citation omitted). *Accord Miller v. Miller,* 216 W.Va. 720, 725–26, 613 S.E.2d 87, 92–93 (2005) (per curiam) (concluding that husband's contract fraud claim and resultant litigation interest constituted a "valuable interest" acquired during the parties' marriage and, thus, monies received in settlement of such claim constituted marital property even though such proceeds were received after the parties had separated). *See also Van de Loo v. Van de Loo,* 346 N.W.2d 173, 176 (Minn.Ct.App.1984) (indicating that "the purpose of the recovery rather than the timing of the recovery controls its characterization"); *Amato v. Amato,* 180 N.J.Super. 210, 219, 434 A.2d 639, 643 (1981) ("The purpose for which the property is received should control." (internal quotations and citation omitted)).

Accordingly, we hold, in a divorce proceeding, that portion of a lump sum workers' compensation permanent total disability award that represents wages the injured spouse would have earned, but for his/her work-related injury, while the parties were married and cohabiting constitutes marital property subject to equitable distribution pursuant to W. Va.Code § 48–7–101, *et seq.*[11]

11. This decision is in accord with our sister jurisdictions. *See, e.g., Miller v. Miller,* 739 P.2d 163, 165 (Alaska 1987) ("[A] workers' compensation disability award is marital property only to the extent that it compensates for loss of earnings during the marriage."); *Cook v. Cook,* 102 Idaho 651, 654, 637 P.2d 799, 802 (1981) ("The dispositive question in classifying workmen's compensation benefits as [marital] or separate property … is … to what extent the award compensates for loss of earning capacity during marriage."); *Leisure v. Leisure,* 605 N.E.2d 755, 759 (Ind.1993) ("The worker's compensation benefits received during the marriage to replace earnings of that period are a marital asset subject to distribution[.]"); Syl. pt. 6, in part, *Gibson–Voss v. Voss,* 4 Neb.App. 236, 541 N.W.2d 74 (1995) ("A workers' compensation award is mar-

## IV.

## CONCLUSION

To summarize, we answer the questions certified by the Circuit Court of Putnam County, as reformulated into a single query, as follows:

In a divorce proceeding, is an injured spouse's award of workers' compensation permanent total disability benefits, which corresponds to the spouse's inability to work while the parties were married and cohabiting, considered to be (1) a replacement for the wages he/she would have earned but for his/her work-related injury and thus marital property, which would be subject to the rules of equitable distribution, or (2) the spouse's personal award for his/her pain and suffering resulting from his/her work-related injury and thus his/her own separate property, which would not be subject to the rules of equitable distribution?

*Answer:* In a divorce proceeding, an injured spouse's award of workers' compensation permanent total disability benefits, which corresponds to the spouse's inability to work while the parties were married and cohabiting, is considered to be a replacement for the wages he/she would have earned but for his/her work-related injury and is thus marital property subject to the rules of equitable distribution.

Having answered the foregoing certified questions, as reformulated, we remand this matter to the Circuit Court of Putnam County for further proceedings consistent with this opinion.

Certified Questions Answered.

ital property only to the extent it recompenses for the couple's loss of income during the marriage."); *Crocker v. Crocker,* 1991 OK 130, ——, 824 P.2d 1117, 1123 (1991) ("A workers' compensation disability award is marital property only to the extent that it recompenses for the couple's loss of income during the marriage.").

1. Separate property is defined as
    (1) Property acquired by a person before marriage;
    (2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;
    (3) Property acquired by a person during marriage, but excluded from treatment as marital

ALBRIGHT, Justice, dissenting:

The majority adopted a misadvised approach in responding to the certified question that raised the issue of whether a permanent total disability ("PTD") award includes, as part of the award, an element for pain and suffering in the context of applying equitable distribution principles in a divorce proceeding. Given the clear absence of any statutory language in the statutes pertaining to equitable distribution that would include an award of PTD benefits as separate property,[1] the majority could have simply concluded that the Legislature has failed to identify PTD awards, or any portion thereof, as constituting separate property. The law of this state undisputedly "expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syl. Pt. 3, in part, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990). Had the majority simply relied upon the limited exclusions provided by the Legislature to marital property and concluded that PTD awards do not come within the definition of separate property, less long-term damage to the law of this state would have resulted. *See* W.Va.Code § 48-1-237. Instead, the majority has severely and unnecessarily muddied the analytical waters of this state's workers compensation law.

While the better approach would have been to refrain from invading an area better addressed by the Legislature, the inconsistencies between the reasoning employed by the majority in this case and that previously relied upon in prior decisions addressing equitable distribution compels further discussion of the issue of whether PTD benefits

property by a valid agreement of the parties entered into before or during the marriage;
    (4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;
    (5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or
    (6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.
W.Va.Code § 48-1-237 (2001).

may intrinsically be designed to include an element for pain and suffering. Despite the absence of determinative statutory language, this Court determined through decisional law that the portion of a personal injury award that is designated as compensation for "pain, suffering, disability, disfigurement, or other debilitation of the mind or body" "constitutes the separate nonmarital property of an injured spouse." Syl. Pt. 1, in part, *Hardy v. Hardy,* 186 W.Va. 496, 413 S.E.2d 151 (1991). This principle was relied upon to include moneys awarded from a tort settlement or verdict award for loss of consortium as the separate property of the noninjured spouse, provided the noninjured spouse can demonstrate the existence of such noneconomic damages through the introduction of competent evidence. *See* Syl. Pt. 4, *Huber v. Huber,* 200 W.Va. 446, 490 S.E.2d 48 (1997); Syl. Pt. 4, *Hardy v. Hardy,* 186 W.Va. 496, 413 S.E.2d 151.

In determining whether the principle first announced in *Hardy* regarding the separate nature of pain and suffering awards in a personal injury suit should be extended to workers' compensation lump sum awards for PTD benefits, the majority flatly announced that PTD awards are "not considered to be an award for the injured employee's pain and suffering." Certainly, the entirety of the award is not designed to be an award for pain and suffering.[2] But, rather than recognize that, while perhaps not subject to precise calculation, a workers compensation PTD award intrinsically contains an element intended to compensate an injured worker for noneconomic damages, the majority opted to categorically eliminate the possible existence of such an inherent noneconomic element as part of the award.

2. Instead of addressing the query of whether a portion of a PTD award is intended to compensate an injured worker for pain and suffering, the majority reformulated the four certified questions and turned the issue into an "all or none" proposition.

3. *See Fitzgerald v. Fitzgerald,* 219 W.Va. 774, n. 9, 639 S.E.2d 866, n. 9, No. 33043 (filed November 30, 2006) and cases cited therein.

4. *See Zelenka v. City of Weirton,* 208 W.Va. 243, 247–48, 539 S.E.2d 750, 754–55 (2000) (recog-

In reaching its conclusion that PTD awards lack any element intended to compensate an injured workers for pain and suffering, the majority suggests that this Court's earlier recognition to the contrary in *State ex rel. Boan v. Richardson,* 198 W.Va. 545, 482 S.E.2d 162 (1996), has been "implicitly modified." In *Boan,* this Court acknowledged that "[w]hile the amount of [workers' compensation] ... payments is, in fact, based on the injured worker's past employment, the benefits are also defined and limited by additional factors such as the average wages in the State" and that such payments in PTD cases serve to "compensate for more than lost wages because ... they stand in lieu of a myriad of damage elements recognized in the tort system ...." 198 W.Va. at 550–51, 482 S.E.2d at 167–68. The majority's conclusion that subsequent decisions of this Court have altered this position that "workers' compensation benefits for permanent total disability are more than simply a wage replacement system" is simply not true.[3] *Id.* at 550, 482 S.E.2d at 167.

At best, the decisions the majority relies upon in its attempt to refute *Boan* merely recognize that our workers' compensation statutes do not recognize as a separate element of recovery any noneconomic damage elements such as pain and suffering.[4] The stating of the obvious—that workers' compensation is provided in lieu of tort damages—does not squarely address the issue at the forefront of this discussion: whether a lump sum PTD award, necessarily encompasses, to some extent, an amount for pain and suffering based on its "in lieu of" tort recovery nature. I submit that it does.

In *Crocker v. Crocker,* 824 P.2d 1117 (Okla. 1991), the Oklahoma Supreme Court ex-

nizing that fact that workers' compensation does not expressly provide compensation for damage elements such as pain and suffering " 'does not require conclusion that there has been no recovery of benefits ... in lieu of damages recoverable in a civil action' "); *Brooks v. City of Weirton,* 202 W.Va. 246, 503 S.E.2d 814 (1998) (discussing rejection of notion that failure of workers' compensation to provide full panoply of available tort damages required conclusion that claim was not " 'covered' " by worker's compensation).

plained that the analytical approach for determining whether a workers' compensation award is marital or separate property derives from how personal injury awards are treated in divorce actions. *See id.* at 1121 n. 11. While the majority does not describe its approach to the issue as being analytical—one which seeks to determine the *underlying nature of a workers' compensation award* as a means of deciding whether the same is separate or marital property—this is the approach it employed.[5] Importantly, in those states applying the analytic approach where the workers' compensation scheme directly compensates the injured employee for disfigurement and/or loss of use of a limb, such amounts are clearly treated as separate property. *See id.; Kirk v. Kirk,* 577 A.2d 976, 979 (R.I.1990); *Doucette v. Washburn,* 766 A.2d 578, 584–85, n. 12 (Me.2001) (discussing separate property nature of permanent impairment compensation versus long term earnings replacement); *see also* Syl. Pt. 4, in part, *Staton v. Staton,* 218 W.Va. 201, 624 S.E.2d 548 (2005) (holding that "[b]enefits that actually compensate for disability are separate property because such monies are personal to the spouse who receives them"). And, as recognized above, where pain and suffering awards are separately identifiable, those amounts, as well as amounts intended to compensate for disability and the loss of ability to conduct a normal life, are included in the injured spouse's separate property. *See Crocker,* 824 P.2d at 1121, n. 11.

In concluding that the nature of the workers' compensation award is solely wage replacement, the majority acts in contravention of the long-standing purpose of workers' compensation law. As we announced in *McVey v. Chesapeake & Potomac Telephone Co.,* 103 W.Va. 519, 138 S.E. 97 (1927), the purpose of the original legislation was "to relieve the employer from any and all civil responsibilities at common law, growing out of or in any way connected with the injury or death of an employee in the service of an employer who had fully complied with the requirements of the act." *Id.* at 523, 138 S.E. at 98; *accord Makarenko v. Scott,* 132 W.Va. 430, 55 S.E.2d 88 (1949). By eliminating the civil remedy option to seek redress under tort law, the Legislature must have intended to encompass within an award of workers' compensation some measure of recovery for those damages that might otherwise be recovered through access to the court system. To suggest, as does the majority, that "in lieu of" necessarily means that the workers' compensation cannot include any element of tort-based recovery within its structure of awards seems illogical.

What the majority fails to appreciate is that the manner in which a workers' compensation award is calculated (i.e. based, *in part,* on wages) is not solely determinative of the underlying nature of the workers' compensation award. The workers' compensation system was originally, and continues to this day, to be propelled by the bargain struck that "in exchange for extending statutorily designated benefits for workplace injuries, an employer gains a guarantee that this statutory system of recovery is the exclusive means for compensating his/her employees, barring any statutory exceptions." *Bias v. Eastern Ass'd Coal Corp.,* 220 W.Va. 190, 640 S.E.2d 540, at 541 (June 8, 2006) (Albright, J., concurring, in part, dissenting, in part). The "bargain which undergirds the workers' compensation system" extends broad immunity to the employer from tort-based recovery for work-related injuries while granting enhanced certainty of compensation to employees free of the burden of overcoming the common-law defenses that often prevented recovery. *Id.* The fact that one objective of the workers' compensation system is to immunize an employer from tort-based actions, however, does not compel the conclusion that the award is not intended to compensate an injured employee in some fashion for the pain and suffering that he or she experienced as a result of the injury. Only by viewing the workers' compensation award as inherently including as part of the award moneys intended to compensate the injured employee for the pain and suffering associated with the injury, does the system withstand scrutiny in terms of serving as a beneficial trade for the elimi-

5. *See generally Crocker,* 824 P.2d at 1119–1123 (discussing four approaches to identifying workers' compensation awards as either marital or separate property: mechanistic approach; case by case approach; unitary approach; and analytic approach).

nation of an injured worker's access to the courts for tort-based recovery.

Commentators have recognized the difficulty in trying to carve out the pain and suffering element in personal injury awards. *See Doucette,* 766 A.2d at 584, n. 11 (citing American Law Institute's comment "recognizing that precisely accurate allocations are often not possible" with regard to nonspecific personal injury awards but noting that "dissolution court presented with this question must resolve it on the basis of the evidence then available"). Just as personal injury awards are not always easily divisible, so too is the case with trying to identify that portion of a PTD lump sum award that was intended to compensate the injured worker for the pain and suffering associated with his or her injury. The fact that such amount is not easily gleaned or identifiable does not make its existence less certain.[6]

By eliminating, in wholesale fashion, the principle that some portion of a PTD award is designed to compensate an injured employee for pain and suffering, the majority has embarked on a path destined to ultimately impair the structural integrity of the workers' compensation system. If one accepts the majority's position that there is no element of compensation inherent to the workers' compensation system for pain and suffering, the quid pro quo bargain nature of the system appears less certain and arguably is markedly tipped against the employee. And, if the balance intended to be achieved by the system is upset, it will not be long before the argument is raised that the workers' compensation schema is not "an adequate substitute remedy for that which might be available in the tort system." *Boan,* 198 W.Va. at 551, 482 S.E.2d at 168. If the foundational basis for the workers' compensation system is attacked by demonstrating the absence of the quid pro quo bargain, the inevitable conclusion that follows is that a violation of due process has resulted by denying an injured worker the right to seek redress for his or her injuries within the court system. Based on my conclusion that the approach adopted

by the majority has weakened the very structure of the workers' compensation system and assuredly set in place the framework for such awards to be attacked on constitutional grounds in the future, I must respectfully dissent.

I am authorized to state that Justice Starcher joins in this dissenting opinion.

BENJAMIN, Justice, concurring:

In enacting the Workers' Compensation Code, at *W.Va.Code* § 23–1–1, *et seq,* the West Virginia Legislature set forth a comprehensive system of proof and recovery for work-related injuries and diseases outside the traditional common law system. Because of its statutory basis and the strong policy and political issues present within the system, this Court's duty must be to give effect to the express intentions of the Legislature, so long as legally permissible. As a Court, we must respect our fellow branch of government and resist the temptation to legislate policy changes from the bench.

Here, the majority opinion properly applies the *Legislature's* intention of what permanent total disability benefits are in its consideration of whether such benefits are marital or separate property. I disagree with my dissenting colleagues and decline their invitation to judicially remold permanent total disability benefits into something the Legislature does not now intend them to be. To do otherwise would not only contravene our necessary duty of restraint herein, but also plunge this Court into the speculative endeavor of determining on appellate review which portion of such benefits represents wage replacement and which portion does not.

No consideration of the nature of permanent total disability benefits can ignore the deliberate and very specific statutory changes made by the Legislature in the last decade regarding such benefits. It is here where the arguments advanced by the dissenting opinion fail. As correctly stated in the majority opinion, it is the Legislature

---

6. The circuit court took a stab at identifying that portion of the workers' compensation award that was attributable in this case to pain and suffering and opined that the amount was 25%. Clearly,

the calculation of any such amount would be better addressed by the Legislature in the absence of any specific factors for arriving at such a figure.

which has caused permanent total disability benefits to be considered wage replacement. See, in part, *W.Va.Code* §§ 23–4–23(b) (2003), 23–4–24 (2005) and 23–4–25(b) (2005). Thus, such benefits cease at the time when retirement is presumed to occur and when retirement-type benefits normally begin. See, *W.Va.Code* § 23–4–6(d) (2005). It is not our role to second-guess the Legislature in this regard.

While I understand many of the concerns of my dissenting colleagues with respect to the pain and suffering component of work-related injuries, I note that the provisions of the workers compensation code distinguish between permanent total and permanent partial disability benefits. While the Legislature has acted definitively to categorize permanent total benefits as wage replacement benefits, I am not convinced that such an argument applies for permanent partial benefits. Though permanent partial benefits are derived by a calculation involving wage considerations, such benefits are often paid to injured workers after they have already returned to work and are otherwise earning their normal wages or salary. Indeed, such benefits are often referred to by claimants as "settlements." Though that term is not technically correct from a legal standpoint, it does describe how such permanent partial benefits are viewed from a lay standpoint.

Because of their nature, and because of the preference under the law of this State for classification of marital property, the majority opinion properly holds that workers' compensation permanent total benefits which are marital property are properly subject to equitable distribution pursuant to *W.Va.Code* § 48–7–101, *et seq.* See, also, *Staton v. Staton*, 218 W.Va. 201, 624 S.E.2d 548 (2005). In so doing, the majority opinion properly gives effect to the intent of the Legislature. Accordingly, I concur with the majority opinion.