## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Donna Miller, f/k/a Donna Wilson,**
**Petitioner Below, Petitioner**

**vs)  No. 16-0587** (Berkeley County 05-D-486)

**Leon Hunter Wilson,**
**Respondent Below, Respondent**

**FILED**

**June 16, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Donna Miller, f/k/a Donna Wilson, by counsel James P. Campbell, appeals the Circuit Court of Berkeley County's May 17, 2016, order denying her motion for reconsideration of a March 22, 2016, order regarding equitable distribution. Respondent Leon Hunter Wilson, by counsel Richard G. Gay, filed a response. Petitioner filed a reply. This appeal centers on the lower courts' valuation of certain "manager fees" that were earned as of the parties' May 31, 2005, separation. Following an evidentiary hearing, the family court determined, and the circuit court affirmed, that petitioner owed more than $627,000 to respondent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

This divorce case has been ongoing for more than ten years, having previously reached this Court on appeal in 2010. By way of brief background, the parties were married in 1990 and petitioner filed for divorce on June 1, 2005. The parties stipulated to May 31, 2005, as the date of their separation. There were no children born from the marriage.

In 1993, the parties formed Hunter Company of West Virginia, for the purpose of conducting real estate development. Each party separately owned one half of the Hunter Company stock. Beginning in 1993, Hunter Company was chosen by a Massachusetts company, National Land Partners ("NLP"), to conduct real estate development in West Virginia. The management of each development project was governed by a Management Agreement. Under each Management Agreement, Hunter Company was paid a "manager fee" that was defined as any net profit remaining after twelve and one-half percent of the gross sales were paid to NLP and all project expenses are paid. It was stipulated that, unless the project made a profit, Hunter Company did not receive any compensation; in fact, it was responsible for any shortfall.

1

At the time of the parties' May 31, 2005, separation, Hunter Company was the manager of six real estate projects that were in various stages of completion. By 2008, the parties had divided their personal property and had agreed to the valuation and distribution of their marital property, except with respect to the valuation of the manager fees. Absent an agreement regarding the valuation of the manager fees as of the time of separation, the parties stipulated that the net value of the marital estate was $9,536,682.14, and respondent advanced petitioner $4,317,737.62 toward her share of the marital estate.

In 2008, the family court conducted a hearing on the valuation of the manager fees and determined their value to be $8,927,959.00. This determination was based primarily on the testimony of petitioner's expert at that time. Based on the valuation of the manager fees, the family court ordered respondent to pay petitioner an additional sum of more than $4 million. Respondent appealed the family court's final order to the circuit court. In a March 25, 2009, order, the circuit court reversed the final order of the family court and found that the value of the manager fees was actually in the negative by over $2 million. The circuit court, therefore, determined that the actual value of the martial estate was lower than the parties' stipulated amount, which resulted in petitioner having been overpaid by almost $900,000. As a result, the circuit court ordered petitioner to pay respondent the amount of the overpayment.

Petitioner appealed the circuit court's March 25, 2009, order to this Court. In *Wilson v. Wilson*, 227 W. Va. 157, 706 S.E.2d 354 (2010), this Court affirmed in part, and reversed in part, the circuit court's order, and remanded the case to the family court with the following direction:

> Upon remand, the family court shall hold a hearing for the sole purpose of determining an accurate value of Hunter's manager fees at the time of the parties' May 31, 2005, separation. After the evidence is taken, the trial court should make thorough findings of fact and conclusions of law in reaching its valuation, and should then proceed to the division of any such fees that are ascertained to be marital property.

*Id*. at 179, 706 S.E.2d at 376. We explained our reasoning as follows:

> "Equitable distribution . . . is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va. Code, 48–2–32 [now W.Va.Code § 48–7–103]." Syllabus Point 1, in part, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990). Unfortunately, as discussed herein, the parties submitted little credible evidence as to the value of Hunter's manager fees. It is the responsibility of the parties, not the court, to propose values to marital property and the parties are bound by the evidence they present. As we said in Syllabus Point 8 of *Mayhew v. Mayhew,* 197 W.Va. 290, 475 S.E.2d 382 (1996), "[t]he burden is on both parties to the litigation to adduce competent evidence on the values to be assigned in equitable distribution cases." Likewise, in Syllabus Point 3 of *Roig v. Roig,* 178 W.Va. 781, 364 S.E.2d 794 (1987), this Court stated, "When the issue in a divorce proceeding is the equitable distribution of marital

2

property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property."

*Wilson*, 227 W. Va. at 178, 706 S.E.2d at 375.

Upon remand, the family court conducted a hearing on May 11 and 12, 2015, to take evidence concerning the value of the manager fees as of the parties' separation on May 31, 2005. The family court heard testimony from petitioner, respondent, petitioner's expert witness Kenneth Apple, CPA, respondent's expert witness Jack Lantzy, CPA, and NLP representative Tim Smith by deposition. The family court found that, as of May 31, 2005, there were six pending projects: (1) Crossings on the Potomac, (2) Ashton Woods, (3) The Springs at Shepherdstown, (4) Overlook at Greenbrier, (5) The Point, and (6) Westvaco. Mr. Apple's methodology focused on the time that respondent individually, as opposed to Hunter Company, had spent on a project. He compiled a chart that listed twenty-three tasks for four of the six pending projects, and indicated whether that task had been completed. Mr. Lantzy, on the other hand, compiled a chart that reflected the total manager fees from each project; the percentage of completion as May 31, 2005; the manager fee income or loss as of May 31, 2005; manager fees paid prior to May 31, 2005; and whether there was a marital asset or liability. Mr. Apple concluded that the value of the marital portion of the manager fees was $2,154,255.00. Mr. Lantzy concluded the value to be a negative $2,291,256.00.

The family court considered the testimony and documentary evidence submitted by both experts and found respondent's expert's calculations, which were based on respondent's specific efforts that had been undertaken on each project, to be more compelling and practical than petitioner's expert's methodology, which was based simply on the amount of time respondent had spent on each project. With regard to Mr. Apple's methodology, the family court found as follows:

> While Mr. Apple's approach of weighing all tasks equally represents an honest attempt to offer an objective analysis, the Court finds it to be essentially an artificial construct that is not reality based, insofar as the time and effort involved in each of the 23 categories [of work performed on each project] simply is not equivalent.

As noted above, based on Mr. Lantzy's calculations, the family court determined that, as of May 31, 2005, the manager fees due Hunter Company from the six projects pending at that time to be in the negative in the amount of $2,291,256.00. When deducted from the stipulated amount of the marital estate, the marital estate's net value became $7,245,426.00. The family court then divided the net equitable estate in half, leaving each party a net estate in the amount of $3,622,713.00. Because petitioner had already received an equitable distribution totaling $4,317,738.62, the family court concluded that she had been overpaid by $695,024.00. However, the family court determined that petitioner was entitled to an award of her attorney's fees because of respondent's recalcitrance in disclosing certain information during the course of the proceedings. The family court, thus, awarded petitioner her attorney's fees in the amount of $67,030.00, which it deducted from the overpayment that she had received in the prior equitable distribution. Accordingly, by "Final Order of Equitable Distribution and Attorney Fees" entered

on June 29, 2015, the family court ordered that petitioner pay respondent $627,994.00. Petitioner moved the family court to reconsider its order, which the family court denied by order entered on September 10, 2015.

Petitioner appealed the family court's order to the circuit court. Therein, petitioner challenged (1) the family court's reallocation of the manager fees received prior to the date of separation; (2) the family court's crediting of the opinions of respondent based on his knowledge and experience; (3) the family court's adoption of the expert opinions of Mr. Lantzy, which were based on the opinions of respondent; (4) the family court's rejection of Mr. Apple's methodology; and (5) the family court's denial of petitioner's motion for reconsideration. By order entered on March 22, 2016, the circuit court affirmed the family court's final order and its order denying reconsideration thereof. Petitioner then sought the circuit court's reconsideration of its March 22, 2016, order, which the circuit court denied by order entered on May 17, 2016. This appeal followed.

**Discussion**

On appeal, petitioner raises the following six assignments of error: (1) Reallocation of $2,242,541 in manager fees received by Hunter Company prior to separation and deposited into marital bank accounts prior to separation as respondent's separate property violated West Virginia Code §§ 48-1-233 and 48-1-237, res judicata, collateral estoppel, and the law of the case; (2) The circuit court and the family court failed to address that income received and deposited into marital accounts prior to separation cannot be separate property because of West Virginia Code §§ 48-1-233 and 48-1-237, res judicata, collateral estoppel, and the law of the case; (3) The family court erred by finding the testimony of Hunter Wilson to be "credible and reasonably reliable, based upon his extensive knowledge and experience" when no such testimony was presented into evidence at trial; (4) The family court erred by crediting the expert opinions of Jack Lantzy, when his opinions were improperly based upon opinions of Hunter Wilson, when Hunter Wilson's opinions were not the kind of information customarily relied upon by valuation experts; (5) The family court erred by failing to credit the expert testimony of Kenneth Apple, CPA, as his opinions were based upon a proper methodology arising from generally accepted accounting practices and valuation methods; and (6) The circuit court erred by denying petitioner's motion for reconsideration.

This Court applies the following standard of review to petitioner's assignments of error, with the exception of her challenge to the denial of reconsideration motion:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

4

Petitioner's first and second assignments of error are closely related, so we address them together. Petitioner argues that, despite the fact that the manager fees for the Ashton Woods and Crossings on the Potomac projects were paid into marital accounts prior to separation, the family court erroneously re-characterized that money as respondent's separate property. West Virginia Code § 48-1-237 defines "separate property" as follows:

(1) Property acquired by a person before marriage;
(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;
(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;
(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;
(5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or
(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

Petitioner contends that manager fees paid into marital accounts prior to separation do not meet any part of the definition of "separate property," but neither the family court nor the circuit court examined the statute. Instead, petitioner contends that West Virginia Code § 48-1-233, which defines "marital property," should have been dispositive. This statute states, in relevant part, as follows:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property does not include separate property as defined in section 1-238; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

Additionally, this Court has held that

5

"W.Va.Code, 48–2–1(e)(1)(1986) [W.Va.Code § 48–1–233 (2001) (Repl.Vol.2004)], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syl. pt. 3, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990).

*Fitzgerald v. Fitzgerald*, 219 W. Va. 774, 780, 639 S.E.2d 866, 872 (2006).

Petitioner also argues that reallocation of cash deposited into marital accounts from the two projects prior to separation violates the "law of the case" doctrine, res judicata, and collateral estoppel. Petitioner contends that, when a case is remanded to the lower court, the "mandate rule" dictates that the lower court has no power to rehear an issue that the appellate court already decided. Thus, petitioner concludes that the only issue for the family court to address on remand was the value of the manager fees, and neither party sought to declare any of the stipulated marital assets from 2008 as separate property.

Upon careful review of the record and the parties' arguments, we find no error. In *Wilson*, we specifically stated as follows:

Thus, after thoroughly reviewing the record and considering all of the parties' arguments, this Court remands this case to the family court to award the appropriate relief consistent with this opinion. Upon remand, the family court shall hold a hearing for the sole purpose of determining an accurate value of Hunter's manager fees at the time of the parties' May 31, 2005, separation. After the evidence is taken, the trial court should make thorough findings of fact and conclusions of law in reaching its valuation, and should then proceed to the division of any such fees that are ascertained to be marital property.

227 W. Va. at 179, 706 S.E.2d at 376. Additionally, we stated that

[b]ased upon all the above, in particular our conclusion that the value of Hunter's manager fees are separate and distinct from a determination of personal or enterprise goodwill, this case will be remanded to the family court for further proceedings consistent herein. To that end, and based on the lack of accurate and/or complete information contained in the record by way of testimony or documentary evidence on this issue, the family court must take additional evidence, solely for the purpose of making appropriate calculations to determine the value of Hunter's manager fees at the time of the parties' separation for a final determination regarding that value for purposes of equitable distribution.

*Id.* Finally, we held as follows:

Profits of a business that are based upon a future contingency or obligation are subject to equitable distribution upon the dissolution of a marriage, but only that portion of the profits for work done during the marriage is actually "marital

6

property." In determining the amount of profits subject to equitable distribution, sound valuation methods must be used, and it may be necessary for a court to retain continuing jurisdiction over the matter until such profits are determined in order to effectuate an equitable distribution of this property.

*Id.* at 159, 706 S.E.2d at 356.

Petitioner claims that, in valuing the manager fees for the purposes of equitable distribution, the family court violated the law of the case doctrine and the mandate rule. With respect to the law of the case doctrine, we have held as follows:

> The law of the case doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal." 5 Am.Jur.2d *Appellate Review* § 605 at 300 (1995) (footnotes omitted). "[T]he doctrine is a salutary rule of policy and practice, grounded in important considerations related to stability in the decision making process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *United States v. Rivera-Martinez,* 931 F.2d 148, 151 (1st Cir. 1991). Thus, consistent with these considerations, we have previously held, "[t]he general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green,* 145 W.Va. 469, 115 S.E.2d 320 (1960). (footnote omitted).

*State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003).

The mandate rule is an aspect of the law of the case doctrine, which this Court has explained as follows:

> A circuit court has no power, in a cause decided by the Appellate Court, to re-hear it as to any matter so decided, and, though it must interpret the decree or mandate of the Appellate Court, in entering orders and decrees to carry it into effect, any decree it may enter that is inconsistent with the mandate is erroneous and will be reversed.

*Id.* Additionally,

> [t]he mandate rule is not limited to matters we decide either explicitly or implicitly on appeal. Rather, when this Court's decision of a matter results in the case being remanded to the circuit court for additional proceedings, our mandate controls the framework that the circuit court must use in effecting the remand.

*Id.* at 809, 591 S.E.2d at 735.

7

Finally, we have defined the doctrine of res judicata as "a doctrine which bars the subsequent litigation of any cause of action which has been previously tried on the merits by a court of competent jurisdiction, and includes within its bar issues which might have been tried." *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 298, 359 S.E.2d 124, 131 (1987). In contrast to res judicata,

> [c]ollateral estoppel is a related doctrine, which applies to issues that were actually litigated in an earlier suit even though the causes of action are different. Res judicata focuses on whether the cause of action in the second suit is the same as in the first suit. The central inquiry on collateral estoppel is whether a given issue has been actually litigated by the parties in the earlier suit. (footnote omitted).

*Id.* at 298–99, 359 S.E.2d at 131–32.

In the present case, we remanded the matter to the family court for a determination of the value of the manager fees as of the parties' separation; this directive necessarily implied that the question of the value of the manager fees had not been "definitively determined by this Court." *See Cummings,* 214 W.Va. at 808, 591 S.E.2d at 734. In fact, in *Wilson,* this Court directed the family court to hold a new hearing for the purpose of allowing both parties to present new evidence with regard to the value of the manager fees because of the inadequacies of the evidence presented in the initial hearing. We agree with petitioner that our remand in *Wilson* was limited, but we find that the family court adhered to it. Even though petitioner received partial equitable distribution payment in 2008 by pre-trial order, there is nothing in the record that indicates that such pre-trial order controlled the final equitable distribution; the parties still contested the value of the manager fees as of their separation. Accordingly, we do not agree with petitioner that the family court violated the law of the case doctrine, the mandate rule, or the doctrines of res judicata or collateral estoppel by permitting the parties to introduce evidence on the value of the manager fees as it related to equitable distribution.

Petitioner's third, fourth, and fifth assignments of error all challenge the family court's adoption of the testimony of respondent's expert and rejection of the testimony of petitioner's expert. Rule 703 of the West Virginia Rules of Evidence states, in relevant part, that

> [a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

In addition, "[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991).

In this case, Kenneth Apple, petitioner's expert witness, testified that the best method of calculating the value of the manager fees for each project was to examine the amount of time respondent individually spent on each project, rather than following the terms of the

Management Agreement. In contrast, respondent's expert witness, Jack Lantzy, focused on respondent's specific efforts – rather than solely the time spent - that had been undertaken on each project. Mr. Apple conceded that this methodology was not a recognized standard used by accountants to determine the effort put into each project; he testified that he was instructed by petitioner's counsel to use the concept of time. The record reflects that the family court meticulously examined the testimony of each expert and found Mr. Lantzy's methodology to be more compelling and reasonable for valuing the manager fees at issue. Thus, we find no error with respect to petitioner's third, fourth, or fifth assignments of error.

In her final assignment of error, petitioner argues that the circuit court erred in denying her motion to reconsider its March 23, 2016, order denying her petition for appeal of the family court's final order of equitable distribution.[1] This Court has held that

> [a] motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

Syl. Pt. 2, *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 717 S.E.2d 235 (2011). In the present case, none of the grounds for reconsideration are present. Accordingly, denial of reconsideration was proper.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 16, 2017

---

[1] Rule 31of the Rules of Practice and Procedure for Family Courts provides in relevant part, as follows:

> (a) *Review by Circuit Court.* - As soon as practical after the last day a response to a petition for appeal is filed, if any, the circuit court shall enter an order granting or refusing the petition for appeal.
> (b) *Refusal Order.* - If a petition for appeal is refused, the circuit court shall enter an order refusing the petition for appeal within 60 days from the last day a response to the petition for appeal could have been filed. A refusal order shall explicitly inform the parties that it is a final order disposing of the appeal. Motions for reconsideration of a refusal order, or renewal of a petition for appeal that has been refused, are not permitted.

Respondent argues that Rule 31 of the Rules of Practice and Procedure for Family Courts eradicates the right of a party in a divorce proceeding to seek reconsideration of a ruling pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. Because the record is clear that petitioner is not entitled to reconsideration in any event, we need not address whether petitioner's motion was prohibited.

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

10